1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON (SEATTLE)

9
10

PHYLLIS   SANTISTEVAN-SULLIVAN,   an
individual,

CASE NO.:

11

Plaintiff,

COMPLAINT FOR DAMAGES

12

vs.

**JURY DEMAND REQUESTED**

13
14

TRANSDIGM   GROUP   INCORPORATED,   and
AVTECHTYEE, INC.,

15

Defendants.

16
17
18
19
20

Plaintiff Phyllis Santistevan-Sullivan ("Ms. Sullivan") asserts her Complaint against her former joint employers, Defendants Transdigm Group Incorporated and AvtechTyee, Inc., (collectively, "Defendants"), as follows. Ms. Sullivan asserts that Defendants fired her (1) as retaliation for her reporting fraudulent financial schemes and (2) due to her race and gender.

21

## I.   NATURE OF THE CASE

22
23
24
25
26

1.1    Ms. Sullivan seeks to hold Defendants to account for (1) a retaliatory culture that discourages employees from reporting fraudulent financial schemes; and (2) discriminatorily firing Ms. Sullivan for allegedly being an "emotional" and "aggressive" Latina woman who lacked "tact" and "collaboration" when reporting financial irregularities and fraud.

27

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

1.2     Transdigm and its 48 wholly owned subsidiaries, including AvtechTyee, produce airplane components and systems. Defendants falsely claim they conduct this business "in a legal, ethical and socially responsible manner."[1] They also falsely claim to support the "dignity" of their employees and to treat them with "fairness and respect."

1.3     In reality, Defendants regularly undermine their own promises. For example:

    1.3.1   The former Director of Defense Pricing for the United States Office of the Under Secretary of Defense described Transdigm as "synonymous" with "unconscionable greed."[2]

    1.3.2   Additionally, in a rare show of bipartisan unity in 2019, senior Republicans and Democrats in the United States Congress chastised Transdigm for being "greedy," charging "outrageous prices," being "evasive" under questioning, and engaging in "egregious price gouging," to the detriment of the military and taxpayers.[3]

    1.3.3   Transdigm overcharged the U.S. Government by 3,850 percent. Their practices resulted in millions of dollars in unfounded profits:[4]

---

[1] (available at: https://www.transdigm.com/about-us/corporate-responsibility-sustainability/) (last accessed 1/11/2023). (Shay Assad).

[2] (available at: https://thecapitolforum.com/transdigm-dod-oig-gao-reports-due-in-early-spring-with-other-reports-pending-findings-could-draw-renewed-congressional-scrutiny-to-company/) (last accessed 1/11/2023).

[3] (available at: https://www.congress.gov/event/117th-congress/house-event/LC67904/text?q=%7B%22search%22%3A%5B%22%5C%22Oversight%5C%5C%22%2C%22an d%5C%5C%22%2C%22Reform%5C%22%22%5D%7D&s=1&r=34)(last accessed 1/11/2023); *see also* (https://www.bloomberg.com/news/articles/2022-04-18/transdigm-s-alleged-pentagon-overcharges-pursued-by-lawmakers?leadSource=uverify%20wall) (last accessed 1/11/2023); (available at: https://www.finance.senate.gov/imo/media/doc/DOD%20Oversight,%2005-13-19,%20CEG%20Letter%20to%20SecDef%20on%20TransDigm%20Price%20Gouging%20PDF.docx.pd f) (last accessed 1/11/2023).

[4] (available at: https://responsiblestatecraft.org/2022/09/13/scamming-the-taxpayer-how-big-defense-budgets-make-us-less-safe/) (last accessed 1/11/2023); (https://www.reuters.com/article/us-

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

## HOW TRANSDIGM IS PRICE-GOUGING THE AMERICAN PEOPLE

| | Regular Price | TransDigm Price |
|---|---|---|
| Retainer Bearing | $32 | $803 |
| Ring | $71 | $4,835 |
| Lug for Auxiliary Power Unit of F-15 | $3 | $67 |
| Valve Assembly Check Oil Pump | $369 | $8,819 |

Source: Inspector General's Office (adapted by Ro Khanna Campaign).

1.4     Driven by this "unconscionable greed," Defendants foster a retaliatory culture. As Ms. Sullivan would discover, employees who speak up and oppose fraudulent financial practices get squashed.



Source: Retaliation at the Highest Levels: Why CEOs, Boards of Directors and HR need to change the culture. Judy Foley (author) (Aug. 2019) (River Grove Books).

---

transdigm-group-congress/congress-to-question-transdigm-over-defense-profits-exceeding-1000-idUSKCN1SL1UP) (last accessed 1/11/23).

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

1.5    Beginning in 2018, Defendants jointly employed Ms. Sullivan as AvtechTyee's Vice President of Finance. Sullivan was one of two women on the company's executive team and the only person of color. Her job duties included ensuring the accuracy of AvtechTyee's financial reporting. Due to her tireless effort and ability, she thrived.



(Phyllis Sullivan)

1.6    Over Ms. Sullivan's tenure, however, Defendants repeatedly manipulated revenue. For example, Ms. Sullivan observed AvtechTyee accelerating revenue recognition to meet earnings target and delaying revenue recognition when they had achieved targets. Additionally, to unlawfully inflate revenue, AvtechTyee shipped unfinished airplane parts, ignoring AvtechTyee engineers' vehement safety objections.

1.7    Eventually, these abuses caused Ms. Sullivan to believe that AvtechTyee was fraudulently manipulating its financial records to inflate the value of Transdigm's stock.  After all, she knew that improper revenue recognition is a common fraud indicator:



BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

1.8     Ms. Sullivan worried she had only discovered the tip of the iceberg. But she feared Defendants' retaliatory culture. She nonetheless decided to speak up. In November 2020, Ms. Sullivan reported to her supervisor, the company's President, that AvtechTyee was intentionally inflating and misstating revenue. In other words, that AvtechTyee was defrauding shareholders and misleading the public about its stability and "success."

1.9     Rather than investigating the reported fraud, the President placed a gag order on her. He removed her authority to speak about the financial misconduct she had uncovered.

1.10    Defendants then immediately began to retaliate against Ms. Sullivan and look for a way to remove her from her financial oversight position. For example, weeks after her November 2020 fraud report, Defendants provided Ms. Sullivan with her first ever negative performance review. Defendants also criticized the *way* Ms. Sullivan reported concerns, using gendered, discriminatory terms such as "aggressive" and overly "emotional." Within days of that review, Defendants posted Ms. Sullivan's job online, seeking to replace her.

1.11    They intimidated Ms. Sullivan into silence. She feared what Defendants would do if she spoke up further. But staying in the background was insufficient. Their retaliation reached a crescendo a few months later, when they fired her.

1.12    Ms. Sullivan is done being silenced and discriminatorily dismissed as an allegedly "aggressive" and "emotional" woman who Defendants criticized in gendered terms:

come across aggressive

employing more tact in her approach to difficult situations.

Her concerns that she raises are all certainly valid, for example the cost reductions of others organizations, but the approach to dealing with them needs to be more collaborative.

(Excerpts from Ms. Sullivan's December 2020 performance review)

1.13    Ms. Sullivan brings the following claims against Defendants: (1) retaliation under the Sarbanes-Oxley Act, 18 U.S.C. §1514A; (2) race and gender discrimination under the

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

Washington Law Against Discrimination ("WLAD") and Title VII of the Civil Rights Act of 1964 ("Title VII"); and (3) common law wrongful discharge in violation of public policy.

## II.     PARTIES

2.1     Ms. Sullivan is Defendants' former employee. At all relevant times to this Complaint, Ms. Sullivan was assigned to and regularly worked out of Defendants' physical location at AvtechTyee Headquarters, 6500 Merrill Creek Parkway, Everett, Washington 98203.

2.2     Defendant Transdigm Group Incorporated is incorporated in Delaware and is headquartered in Ohio. Transdigm is a publicly traded company subject to the Sarbanes-Oxley Act. Transdigm currently transacts business in the Western District of Washington. At all times relevant hereto, Transdigm transacted business in the Western District of Washington, in Snohomish County.

2.3     Defendant AvtechTyee, Inc., is incorporated in Washington state and is headquartered in Everett, Washington. AvtechTyee is a wholly owned subsidiary of Transdigm. It is subject to the Sarbanes-Oxley Act. AvtechTyee currently transacts business in the Western District of Washington. At all times relevant hereto, AvtechTyee transacted business in the Western District of Washington, in Snohomish County.

## III.     JURISDICTION AND VENUE

3.1     This Court has federal question jurisdiction under 28 U.S.C. §1331 for claims brought under Title VII and Sarbanes Oxley. The Court has supplemental jurisdiction over the Washington state claims under 28 U.S.C. § 1367.

3.2     Venue is proper in the Western District of Washington at Seattle under 28 U.S.C. § 1391 because Defendants transact business in the Western District of Washington (including Snohomish County); Ms. Sullivan worked for Defendants in the Western District of

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

Washington (Snohomish County); and a substantial part of the events that gave rise to this lawsuit occurred in the Western District of Washington (Snohomish County).

3.3     Ms. Sullivan satisfied the administrative requirements of the Sarbanes Oxley Act, 18 USC § 1514A, by timely filing an October 29, 2021 Whistleblower Complaint with the United States Department of Labor - Occupational Safety and Health Administration. (Case No. 0-1960-22-052). Ms. Sullivan has exercised the "kick out" provisions of 18 USC § 1514A and this Complaint is timely.

3.4     Ms. Sullivan satisfied the administrative requirements of Title VII by timely filing a February 28, 2022 Discrimination Charge with the United States Department of Labor - Equal Employment Opportunity Commission. (Charge No. 551-2022-03195).  The EEOC issued a Notice of Right to Sue. And this Complaint was timely filed within 90 days thereafter.

## IV.     INTRODUCTION REGARDING RETALIATION UNDER SARBANES OXLEY

4.1     History is littered with examples of corporate fraud. Corporate greed frequently devastates Average Janes and Joes. For example, after Enron perpetuated one of the biggest accounting frauds in US history, stock markets crashed and employees and shareholders lost billions.

4.2     To help prevent the next Enron, Congress passed the Sarbanes-Oxley Act to help protect investors from fraudulent financial reporting. One way the law protects investors is by providing increased protections to employee whistleblowers. Sarbanes-Oxley recognizes that one of the best ways to prevent fraud is to ensure employees are empowered to speak up about possible shareholder fraud and violations of SEC regulations.

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409



4.3     It is important to speak up because an employee who observes fraud may only be able to see the tip of the iceberg. For example, where companies accelerate revenue at times where they are short of financial goals, alarm bells should go off.

4.4     Companies can only stop fraud if they investigate and take employee concerns seriously. But when companies instead foster a retaliatory culture that values greed over ethics, fraud can grow into an Enron-like financial meltdown, devastating "Main Street."



## V.     INTRODUCTION REGARDING DISCRIMINATION

5.1     Racial and gender biases also caused Ms. Sullivan's termination from employment. As the jury will hear, scientific research indicates that discriminatory attitudes are common, even typical, in 21st century America and further establishes that such attitudes often result in decisions harmful to racial minorities and women.

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

5.2     In today's workplace, there are many common and concrete patterns of discrimination experienced by racial minorities and women.

5.3     One such pattern is expecting women and minorities to behave in deferential rather than dominant ways. Women must be assertive, or they will face criticism as "poor leaders." But, if they speak up, they are commonly criticized for being "aggressive," "shrill," or other gendered terms. This pattern of conflicting workplace expectations is sometimes called "Tightrope" bias because female employees must walk a tightrope that many males are not subject to:



5.4     Another concrete pattern is requiring female and minority employees to provide more evidence of competence to be seen as equally competent (sometimes called "Prove It Again" bias).  A woman is only as skilled as her last success. She must constantly prove her worth to be seen as equal to men. This double standard places women under greater stress and they are more likely to be ignored, interrupted, or criticized for communication.

5.5     A third common and concrete pattern of discrimination is pervasive reliance on racial and gendered stereotypes. For example, Latinas face stereotypes about being lazy, stupid, and unmotivated. Additionally, women are stereotyped as being poor fits for certain roles, including leadership and finance positions.

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

5.6     It is as if these patterns of bias create an invisible escalator in the American workplace—allowing some employees to rise to positions of power, while racial minorities and women struggle to keep up despite working harder to prove themselves. This was Ms. Sullivan's experience.



5.7     Ms. Sullivan endured each of these types of workplace discrimination during her employment. For example, before she reported financial irregularities, she received positive feedback. After Ms. Sullivan's whistleblowing conduct, her superiors dismissed her as an "aggressive" and "emotional" Latina woman. They immediately sought to replace her. No one investigated her reports of fraud or took her role as corporate financial supervisor seriously, despite her experience and training.

5.8     Under the law, it is unimportant whether an employer consciously intends to treat employees differently due to race or sex or simply does so because of unthinking stereotypes or bias. [5]   Even well-intentioned people unknowingly act on biased attitudes. Discrimination law focuses on causation not on conscious motivation. Unwitting or ingrained bias is just as harmful and worthy of eradication as blatant or calculated discrimination.

---

[5]   *See, e.g., Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 29 (1st Cir. 1999) (applying stereotyping analysis of *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989) to race discrimination in employment).

COMPLAINT FOR DAMAGES                     -10-

5.9     Defendants treated Ms. Sullivan less favorably because of her protected characteristics.   Stereotypes against Latinas and women substantially contributed to Ms. Sullivan's unlawful termination from employment.   And the evidence in this case includes concrete patterns of bias against women and racial minorities common in the workplace. This is unlawful discrimination.

## VI.     FACTS

### A.  Defendants are subject to the Sarbanes Oxley Act.

6.1     Transdigm is a publicly traded corporation. (NYSE: TDG).

6.2     Transdigm issues a class of securities registered under section 12 of the Securities Exchange Act of 1934.

6.3     Transdigm is required to file reports under section 15(d) of the Securities Exchange Act of 1934.

6.4     AvtechTyee's financial information is included in Transdigm's consolidated financial statements.

6.5     Defendants are subject to regulation under the Sarbanes-Oxley Act, as well as the Securities Exchange Act of 1934 as amended, of which the Sarbanes-Oxley Act is a part.

### B.  Background regarding Ms. Sullivan's role at Defendants' Companies.

6.6     From an early age, Ms. Sullivan was passionate about math and accounting. Growing up in a home heated by a wood fire, her parents also raised her to pull herself up by her bootstraps and to do the right thing. Eventually, in ninth grade, she took her first accounting course. From that moment forward, she knew she wanted to work in finance. She worked hard to fulfill this dream, including working as a dishwasher and in retail to put herself through school.

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

6.7     When Defendants hired Ms. Sullivan in 2018, she believed she had found her dream job. She started working as Controller for AvtechTyee, with Defendants later changing her job title to Vice President of Financial Reporting and subsequently to Vice President of Finance.

6.8     Company President Dave Bender recruited her to move to the Pacific Northwest and accept the top financial position.  He had worked with Ms. Sullivan at prior companies and knew she would be excellent. He painted a picture for her of a financially strong company where she could eventually rise to become a company president.  Ms. Sullivan looked forward to the challenge and hoped to establish a secure future for herself and her three children.

**C.  Ms. Sullivan, a hardworking and skilled employee, receives positive feedback until she forcefully challenges fraudulent financial practices.**

6.9     During her employment at Defendants, Ms. Sullivan met the expectations for her role. Her duties included monitoring and approving AvetchTyee's accounting practices, financial reporting, and its GAAP compliance. Generally Accepted Accounting Principles (GAAP) makes the financial reporting process transparent and standardized allowing for quick and accurate cross-company comparisons.

6.10    Ms. Sullivan is a Certified Public Accountant (CPA) who is governed by state licensing requirements for continuing education.

6.11    She excelled at her job because of her hardworking nature, tireless commitment, and abilities.

6.12    In December 2019, President Bender provided Sullivan a positive performance review. President Bender rated Ms. Sullivan as a 4, which under AvtechTyee's rating system "exceeds expectations."

6.13    Until December 2020, Defendants provided Ms. Sullivan with only positive performance reviews.

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

1   6.14    As described below, however, Defendants' tone shifted sharply negative after

2   Ms. Sullivan reported that AvtechTyee was falsely and unlawfully inflating revenue.

3   **D. Based on a series of transactions, Ms. Sullivan eventually concludes that AvtechTyee**

4   **is fraudulently manipulating revenue.**

5   6.15    During her employment, Ms. Sullivan observed that AvtechTyee repeatedly

6   engaged in financial practices that violated revenue recognition standards and GAAP,

7   including ASC 606.

8   6.16    Ms. Sullivan knew that repeatedly violating revenue recognition standards and

9   GAAP is a strong indicator that companies are fraudulently misstating revenue. For example,

10   most SEC enforcement actions involve situations where companies accelerate revenue

11   recognition when they are short of their targets or delay revenue recognition when they have

12   already met their targets. That is exactly what Ms. Sullivan observed at AvtechTyee.

13   6.17    By way of illustrative example, during Ms. Sullivan's employment AvtechTyee:

14   6.17.1  Ignored the safety objections of AvtechTyee engineers and shipped an

15   unfinished airplane component to Lockheed Martin with the intent of falsely

16   accelerating hundreds of thousands of dollars in revenue.

17   6.17.2  Falsely claimed revenue in the hundreds of thousands of dollars on a Boeing

18   project, even though a product had never been delivered to Boeing or

19   invoiced to Boeing;

20   6.17.3  Tracked work orders in a way that resulted in at least hundreds of thousands

21   of dollars in improperly recognized revenue.

22   6.17.4  Failed to account for product returns, and at other times accounted for

23   product returns at times where AvtechTyee had already met their quarterly

24   targets, resulting in at least hundreds of thousands of misstated revenue;

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

6.17.5   Continued intentionally misstating revenue despite Ms. Sullivan repeatedly correcting these issues.

6.17.6   Accelerated significant revenue at times that were beneficial to AvtechTyee's bottom line and/or bonuses for corporate executives.

6.17.7   Delayed significant revenue at times where AvtechTyee had already hit their targets.

6.18    Based on AvtechTyee's pattern of repeatedly misstating revenue, Ms. Sullivan eventually concluded that AvtechTyee, through Sales VP Kevin Hanson, was fraudulently misstating revenue to inflate revenue and achieve bonuses for corporate executives. The companies tied bonuses for executives to achieving revenue targets at regular intervals.

6.19    Ms. Sullivan wanted AvtechTyee to investigate the revenue reporting practices of Sales VP Hanson and others.

6.20    Ms. Sullivan worried that what she had uncovered was only the tip of the iceberg.

6.21    But Ms. Sullivan also feared Defendants' retaliatory culture.

**E.   In November 2020, Ms. Sullivan reports apparent shareholder fraud to President Bender.**

6.22    Despite her fear of retaliation, in November 2020, Ms. Sullivan reported Sales VP Hanson to President Bender.

6.23    Ms. Sullivan had questioned and challenged Sales VP Hanson's revenue recognition practices before November 2020. Yet, his troubling practices continued and he became hostile to Ms. Sullivan.

6.24    This time, Ms. Sullivan was firm. In her report to President Bender, she accused Hanson of intentionally and unlawfully inflating and deflating revenue. In other words, she reported to President Bender that Hanson was engaged in intentional fraud.

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

6.25    Sales VP Hanson was treated as successful and influential within the company. But Ms. Sullivan had to say something.

6.26    Ms. Sullivan had hoped that President Bender would be an ally. She hoped that he would help her stand up against Transdigm's golden boy, Sales VP Hanson. But she was sorely disappointed.

6.27    Instead of taking Ms. Sullivan's report seriously, President Bender instructed Ms. Sullivan to keep quiet.  She was not to have any communication about the issue of revenue timing with Transdigm's Group Controller or anyone else, unless Bender reviewed and approved the communication. President Bender's instruction was a gag order and a threat to her job.

6.28    It was clear to her from the President's response that this was no accident.

6.29    Based on information and belief, Defendants never took any action to investigate Sales VP Hanson or his scheme to engage in shareholder fraud, even though Defendants acknowledged that Sales VP Hanson's actions were suspicious and wrong.

**F.  Defendants immediately retaliate against Ms. Sullivan and criticize her in discriminatory terms.**

6.30    After Ms. Sullivan reported Sales VP Hanson's fraudulent scheme to President Bender, Defendants began retaliating against Ms. Sullivan.

6.31    By way of illustrative example, President Bender retaliated against Ms. Sullivan by becoming rude and ostracizing her.

6.32    Additionally, within weeks of her November 2020 report, President Bender provided Ms. Sullivan a retaliatory performance review.

6.33    President Bender reduced Ms. Sullivan's score to 2.8, which under AvtechTyee's rating system is a "marginal" rating.

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

6.34    That performance review contained sexist and discriminatory buzz words regarding minority women that speak up: "can come across aggressive;" needs "more tact;" and needs to be "more collaborative" when raising concerns.

6.35    Around the same time, President Bender also verbally criticized Ms. Sullivan using sexist terms, calling her too "emotional" when she raised concerns.

6.36    Ms. Sullivan refused to sign the performance review because she believed that it was retaliatory.

6.37    Within weeks of Ms. Sullivan's November 2020 report of fraud, AvtechTyee also retaliated against Ms. Sullivan by posting her job position online. Ms. Sullivan saw the advertisement with her own eyes. She was devastated.

6.38    Around this time, Ms. Sullivan also raised concerns to AvtechTyee Human Resources Director Jean Williams that she was being evaluated negatively because she had reported Sales VP Hanson for intentionally inflating revenue. Rather than act on her allegation of retaliation, HR Director Williams called Ms. Sullivan a "crybaby."

6.39    After November 2020, President Bender and Sales VP Hanson began to turn up the heat, including making racist jokes about Mexicans, even though they knew Sullivan was Mexican. For example, with Ms. Sullivan present, they called Mexico the "dark basement" of the United States.

6.40    In May 2021, Defendants hired Ms. Sullivan's replacement, a white male.

6.41    Then, that same month, Defendants retaliated and discriminated against Ms. Sullivan by terminating her employment. Upon information and belief, personnel at Transdigm and AvtechTyee jointly approved her termination.

6.42    Based on information and belief, Defendants treated employees who actually had significant performance struggles, but did not speak up about securities fraud and/or were

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

not Latina women, more favorably. Defendants fired Ms. Sullivan, even though she met and exceeded the expectations for her role. In contrast, Defendants allowed struggling employees to continue their employment.

6.43    Ms. Sullivan sought an explanation for why she was being fired. Defendants, however, refused to give her any explanation.

6.44    For example, in June 2021, when Ms. Sullivan again asked why her employment had ended, AvtechTyee refused to provide a "stated reason beyond voluntary versus involuntary."

6.45    State law requires giving a reason for termination upon request.  The jury may infer that the real reason for termination was unlawful.

6.46    While Ms. Sullivan lost her job for reporting fraud, the person responsible for that fraud suffered no apparent consequences. In fact, in October 2021, Transdigm promoted Sales VP Hanson to President of Korry Electronics, another wholly owned subsidary of Transdigm.

6.47    Defendants chose greed and short-term profits over what was right.

**G.  Defendants jointly employed Ms. Sullivan.**

6.48    At all relevant times hereto, Defendants jointly employed Ms. Sullivan.

6.49    Before Ms. Sullivan could be hired as AvtechTyee's Controller/VP of Finance, she interviewed with Transdigm's Group Controller and a Transdigm Executive VP.

6.50    Based on information and belief, Transdigm had the power to approve and/or reject the hiring of Ms. Sullivan as AvtechTyee's Controller/VP of Financial Reporting.

6.51    AvtechTyee President Dave Bender supervised Ms. Sullivan.

6.52    Transdigm's Group Controller also supervised Ms. Sullivan.

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

6.53    Ms. Sullivan was subject to numerous AvtechTyee and Transdigm policies and job requirements, including the Transdigm Business Conduct and Ethics Policy.

6.54    AvtechTyee and Transdigm provided Ms. Sullivan with job training.

6.55    Ms. Sullivan's performance reviews were conducted on Transdigm's letterhead.

6.56    Transdigm (including Transdigm's Group Controller) regularly assigned Ms. Sullivan day-to-day work, including setting due dates on work assignments.

6.57    Transdigm, including its Group Controller, provided feedback about Ms. Sullivan's performance.

6.58    Based on information and belief, Transdigm had the ability to discipline or fire Ms. Sullivan.

6.59    In the alternative, Transdigm and AvtechTyee are Ms. Sullivan's employer under a single employer theory. Based on information and belief, Defendants are so integrated in their operations that they are effectively one employer. Based on information and belief, despite claiming AvtechTyee is an "independent company," in truth Defendants have heavily integrated operations. Upon information and belief, Transdigm exercises management control over AvtechTyee, and Defendants share centralized control of labor relations.

## VII.    FIRST & SECOND CAUSES OF ACTION:

## RACE AND GENDER DISCRIMINATION IN VIOLATION OF THE WLAD AND TITLE VII
### (Against all Defendants)

7.1    Plaintiff realleges the paragraphs above as if fully set forth herein.

7.2    Ms. Sullivan is a Latina woman.

7.3    Ms. Sullivan's race and gender was a substantial factor in the termination of her employment at Defendants. Defendants also fired Ms. Sullivan because of her race and gender.

7.4    Ms. Sullivan was qualified for her position when Defendants fired her.

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

1    7.5    Defendants violated the WLAD and Title VII when they terminated Ms. Sullivan's

2  employment.

3    7.6    As a direct result of Defendants' unlawful conduct, Ms. Sullivan has suffered and

4  continues to suffer lost wages and pecuniary benefits of her employment, future lost earnings,

5  and emotional harm, including grief, loss of enjoyment of life, damage to reputation, fear,

6  anxiety, anguish, embarrassment, humiliation, and other damages in amounts to be proved at

7  trial.  These harms are ongoing and are reasonably likely to be experienced in the future.

8              **VIII.    THIRD CAUSE OF ACTION:**

9

10          **RETALIATION IN VIOLATION OF SARBANES-OXLEY ACT**
             **(Against all Defendants)**

11

12    8.1    Plaintiff realleges the paragraphs above as if fully set forth herein.

13    8.2    Ms. Sullivan engaged in protected conduct when, among other things, she

14  provided information to her supervisor, President Bender, regarding conduct that she

15  reasonably believed constituted securities fraud and any provision of federal law relating to

16  shareholder fraud. Namely, she reported to President Bender that Sales VP Hanson was

17  intentionally violating GAAP and intentionally reporting revenue incorrectly to falsely inflate

18  AvtechTyee's revenue and end-of-quarter financial numbers.

19    8.3    Ms. Sullivan also engaged in protected conduct when, among other things, she

20  provided information to her direct supervisor, President Bender, regarding conduct that she

21  reasonably believed violated an SEC rule or regulation, including without limitation SEC

22  regulations providing that (1) financial statements which are not prepared in accordance with

23  GAAP, including ASC 606, are presumptively misleading or inaccurate, 17 C.F.R. § 210.4–

24  01(a)(1); and (2) publicly traded companies must comply with standards published by the

25  Financial Accounting Standards Board, including ASC 606. SEC Commission Guidance

26

27

COMPLAINT FOR DAMAGES                    -19-

Regarding Revenue Recognition for Bill-and-Hold Arrangements; SEC Topic 11, 11100 New Revenue Standard (FASB ASC Topic 606).

8.4     Ms. Sullivan suffered an adverse action, including without limitation the termination of her employment.

8.5     A contributing factor in the termination of Ms. Sullivan's employment was her protected conduct.

8.6     As a direct result of Defendants' unlawful conduct, Ms. Sullivan has suffered and continues to suffer lost wages and pecuniary benefits of her employment, future lost earnings, and emotional harm, including grief, loss of enjoyment of life, damage to reputation, fear, anxiety, anguish, embarrassment, humiliation, and other damages in amounts to be proved at trial.  These harms are ongoing and are reasonably likely to be experienced in the future.

## IX.     FOURTH CAUSE OF ACTION:

### WRONGFUL DISCHARGE (COMMON LAW)
### (Against all Defendants)

9.1     Plaintiff realleges the paragraphs above as if fully set forth herein.

9.2     A substantial factor motivating Defendants' termination of Ms. Sullivan's employment was her reporting what she reasonably believed to be Defendants' unlawful misconduct, including without limitation Ms. Sullivan reporting shareholder fraud.

9.3     Defendants' termination of Ms. Sullivan's employment violated a clear mandate of public policy, including without limitation clear public policies requiring honesty in financial reporting of publicly traded companies.

9.4     As a direct result of Defendants' unlawful conduct, Ms. Sullivan has suffered and continues to suffer lost wages and pecuniary benefits of her employment, future lost earnings, and emotional harm, including grief, loss of enjoyment of life, damage to reputation, fear,

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409

anxiety, anguish, embarrassment, humiliation, and other damages in amounts to be proved at trial.  These harms are ongoing and are reasonably likely to be experienced in the future.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendants, awarding her:

1.   Expungement of any negative entries to Ms. Sullivan's personnel file and any other derogatory information that may have been placed in Ms. Sullivan's employment file by Defendants;

2.   Posting a notice to Defendants' employees indicating that Defendants have been ordered to comply with the whistleblower provisions of the Sarbanes-Oxley Act and pay Ms. Sullivan damages due to Defendants' unlawful treatment;

3.   Lost wages, including front and back pay, lost bonuses, and lost medical and retirement benefits, and other lost pecuniary benefits of employment, in an amount to be proven at trial;

4.   Compensatory damages for emotional harm in an amount to be proven at trial;

5.   Punitive damages;

6.   Reasonable attorneys' fees, expert witness fees, and costs pursuant to, among other statutes, RCW 49.60.030(2) and 49.48.030, Sarbanes Oxley, Title VII, and any other basis allowed by law;

7.   Pre- and post-judgment interest at the maximum rate allowed by law;

8.   Damages to make up for any adverse tax consequences for any award to Ms. Sullivan; and

9.   Such other relief as this Court may deem appropriate.

**Ms. Sullivan hereby demands a jury trial on all of the issues set forth herein.**

COMPLAINT FOR DAMAGES                    -21-

1                Dated this 8th day of February, 2023.

2

3     BLOOM LAW PLLC                        EIGHT & SAND

4

5         */s/ Beth Bloom*                  */s/ Jeff R Dingwall*

6         */s/ Jay Corker Free*          Jeff R. Dingwall, WSBA #60523

Beth Barrett Bloom, WSBA #31702     Attorney for Plaintiff Phyllis Sullivan

7     Jay Corker Free, WSBA #51393        750 West Fir Street, Suite 602

Attorneys for Plaintiff Phyllis Sullivan   San Diego, California 92101

8     3827-C South Edmunds St.          Phone: (619) 796-3464

Seattle, Washington 98118         Email:    jeff@eightandsandlaw.com

9     Phone: (206) 323-0409

Email:    bbloom@bloomlawpllc.com

10    Email:    jfree@bloomlawpllc.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

BLOOM LAW PLLC
3827-C South Edmunds St.
Seattle, Washington 98118-1729
(206) 323-0409