1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE JUDGE TANA LIN

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION**

PHYLLIS SANTISTEVAN-SULLIVAN, an individual,

                   Plaintiff,

     v.

TRANSDIGM GROUP INCORPORATED, and AVTECHTYEE, INC.,

               Defendants.

Case No. 2:23-cv-00186

**AMENDED ANSWER AND DEFENSES TO COMPLAINT**

Defendants TransDigm Group Incorporated ("TransDigm") and AvtechTyee, Inc., ("AvtechTyee") by and through their attorneys, Seyfarth Shaw LLP, hereby submit their Answer and Defenses to Plaintiff's Complaint as follows:

## I.     NATURE OF THE CASE

**COMPLAINT ¶1.1:**

Ms. Sullivan seeks to hold Defendants to account for (1) a retaliatory culture that discourages employees from reporting fraudulent financial schemes; and (2) discriminatorily firing Ms. Sullivan for allegedly being an "emotional" and "aggressive" Latina woman who lacked "tact" and "collaboration" when reporting financial irregularities and fraud.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 1

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

**ANSWER:**

Defendants admit that Plaintiff has filed claims against Defendants as outlined in the Complaint, but deny all other allegations in Paragraph 1.1 of the Complaint.

**COMPLAINT ¶1.2:**

TransDigm and its 48 wholly owned subsidiaries, including AvtechTyee, produce airplane components and systems. Defendants falsely claim they conduct this business "in a legal, ethical and socially responsible manner."[1] They also falsely claim to support the "dignity" of their employees and to treat them with "fairness and respect."

**ANSWER:**

Defendants admit that TransDigm and some of its wholly owned subsidiaries, including AvtechTyee, produce aerospace components and systems, but deny all other allegations in Paragraph 1.2 of the Complaint.

**COMPLAINT ¶1.3:**

In reality, Defendants regularly undermine their own promises. For example:

**ANSWER:**

Defendants deny the allegations in Paragraph 1.3 of the Complaint.

**COMPLAINT ¶1.3.1:**

The former Director of Defense Pricing for the United States Office of the Under Secretary of Defense described Transdigm as "synonymous" with "unconscionable greed."[2]

---

[1] (available at: https://www.transdigm.com/about-us/corporate-responsibility-sustainability/) (last accessed 1/11/2023). (Shay Assad).

[2] (available at: https://thecapitolforum.com/transdigm-dod-oig-gao-reports-due-in-early-spring-with-other-reports-pending-findings-could-draw-renewed-congressional-scrutiny-to-company/) (last accessed 1/11/2023).

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 2

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1  **ANSWER:**

2       Defendants admit that the link provided in footnote 2 of Paragraph 1.3.1 contains the quotes

3  Plaintiff ascribes to the former Director of Defense Pricing for the United States Office of the

4  Secretary of Defense, but deny any factual allegations in Paragraph 1.3.1 of the Complaint.

5  **COMPLAINT ¶1.3.2:**

6       Additionally, in a rare show of bipartisan unity in 2019, senior Republicans and Democrats

7  in the United States Congress chastised Transdigm for being "greedy," charging "outrageous

8  prices," being "evasive" under questioning, and engaging in "egregious price gouging," to the

9  detriment of the military and taxpayers.[3]

10  **ANSWER:**

11       Defendants admit that the link provided in footnote 3 of Paragraph 1.3.2 of the Complaint

12  contains the quotes Plaintiff ascribes to members of the United States Congress, but deny the

13  purported factual allegations in Paragraph 1.3.2 of the Complaint.

14  **COMPLAINT ¶1.3.3:**

15       Transdigm overcharged the U.S. Government by 3,850 percent. Their practices resulted in

16  millions of dollars in unfounded profits:[4]

17

18

---

19  [3]      (available    at:    https://www.congress.gov/event/117th-congress/house-
20  event/LC67904/text?q=%7B%22search%22%3A%5B%22%5C%22Oversight%5C%5C%22%2
     C%22an    d%5C%5C%22%2C%22Reform%5C%22%22%5D%7D&s=1&r=34)(last   accessed
21  1/11/2023); see also (https://www.bloomberg.com/news/articles/2022-04-18/transdigm-s-alleged-
     pentagon-overcharges-pursued-by-lawmakers?leadSource=uverify%20wall)    (last     accessed
22  1/11/2023);                            (available                            at:
     https://www.finance.senate.gov/imo/media/doc/DOD%20Oversight,%2005-13-
23  19,%20CEG%20Letter%20to%20SecDef%20on%20TransDigm%20Price%20Gouging%20PDF
     .docx.pd f) (last accessed 1/11/2023).
24  [4]  (available  at:  https://responsiblestatecraft.org/2022/09/13/scamming-the-taxpayer-how-big-
25  defense-budgets-make-us-less-safe/)          (last        accessed         1/11/2023);
     (https://www.reuters.com/article/us-transdigm-group-congress/congress-to-question-transdigm-
26  over-defense-profits-exceeding-1000-idUSKCN1SL1UP) (last accessed 1/11/23).

---

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 3

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

94502345v.1

## HOW TRANSDIGM IS PRICE-GOUGING THE AMERICAN PEOPLE

|  | Regular Price | TransDigm Price |
|---|---|---|
| Retainer Bearing | $32 | $803 |
| Ring | $71 | $4,835 |
| Lug for Auxiliary Power Unit of F-15 | $3 | $67 |
| Valve Assembly Check Oil Pump | $369 | $8,819 |

Source: Inspector General's Office (adapted by Ro Khanna Campaign).

**ANSWER:**

Defendants admit that the link provided in footnote 4 of Paragraph 1.3.3 of the Complaint contains the information asserted in Paragraph 1.3.3, but deny the purported factual allegations in Paragraph 1.3.3 of the Complaint.

**COMPLAINT ¶1.4:**

Driven by this "unconscionable greed," Defendants foster a retaliatory culture. As Ms. Sullivan would discover, employees who speak up and oppose fraudulent financial practices get squashed.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 4

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

1
2
3
4
5
6
7
8
9
10



Source: Retaliation at the Highest Levels: Why CEOs,
Boards of Directors and HR need to change the culture.
Judy Foley (author) (Aug. 2019) (River Grove Books).

11  **ANSWER:**

12  Defendants deny the allegations in Paragraph 1.4 of the Complaint.

13  **COMPLAINT ¶1.5:**

14  Beginning in 2018, Defendants jointly employed Ms. Sullivan as AvtechTyee's Vice

15  President of Finance. Sullivan was one of two women on the company's executive team and the

16  only person of color. Her job duties included ensuring the accuracy of AvtechTyee's financial

17  reporting. Due to her tireless effort and ability, she thrived.

18
19
20
21
22
23
24

(Phyllis Sullivan)

25
26

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

**ANSWER:**

Defendants admit Plaintiff was employed by AvtechTyee starting in 2018 as its Controller and later as its Vice President of Finance. Defendants admit that Plaintiff was one of two women Vice Presidents and the only Vice President who was a person of color. Defendants also admit that part of Plaintiff's job duties involved ensuring the accuracy of AvtechTyee's financial reporting. Defendants deny the remaining allegations in Paragraph 1.5 of the Complaint.

**COMPLAINT ¶1.6:**

Over Ms. Sullivan's tenure, however, Defendants repeatedly manipulated revenue. For example, Ms. Sullivan observed AvtechTyee accelerating revenue recognition to meet earnings target and delaying revenue recognition when they had achieved targets. Additionally, to unlawfully inflate revenue, AvtechTyee shipped unfinished airplane parts, ignoring AvtechTyee engineers' vehement safety objections.

**ANSWER:**

Defendants deny the allegations in Paragraph 1.6 of the Complaint.

**COMPLAINT ¶1.7:**

Eventually, these abuses caused Ms. Sullivan to believe that AvtechTyee was fraudulently manipulating its financial records to inflate the value of Transdigm's stock. After all, she knew that improper revenue recognition is a common fraud indicator:



AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 6

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

**ANSWER:**

Defendants lack knowledge or information to admit or deny what Plaintiff believed, and therefore deny that allegation. Defendants also deny the remaining allegations in Paragraph 1.7 of the Complaint.

**COMPLAINT ¶1.8:**

Ms. Sullivan worried she had only discovered the tip of the iceberg. But she feared Defendants' retaliatory culture. She nonetheless decided to speak up. In November 2020, Ms. Sullivan reported to her supervisor, the company's President, that AvtechTyee was intentionally inflating and misstating revenue. In other words, that AvtechTyee was defrauding shareholders and misleading the public about its stability and "success."

**ANSWER:**

Defendants admit that in November 2020, Plaintiff asked AvtechTyee's President, Dave Bender, about an outstanding balance due on a Boeing invoice for a Wedgetail NRE (non-recurring engineering cost). Defendants lack knowledge or information to admit or deny what Plaintiff worried about or feared, and therefore deny those allegations. Defendants also deny the remaining allegations in Paragraph 1.8 of the Complaint.

**COMPLAINT ¶1.9:**

Rather than investigating the reported fraud, the President placed a gag order on her. He removed her authority to speak about the financial misconduct she had uncovered.

**ANSWER:**

Defendants deny the allegations in Paragraph 1.9 of the Complaint.

**COMPLAINT ¶1.10:**

Defendants then immediately began to retaliate against Ms. Sullivan and look for a way to remove her from her financial oversight position. For example, weeks after her November 2020 fraud report, Defendants provided Ms. Sullivan with her first ever negative performance review. Defendants also criticized the way Ms. Sullivan reported concerns, using

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 7

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

gendered, discriminatory terms such as "aggressive" and overly "emotional." Within days of that review, Defendants posted Ms. Sullivan's job online, seeking to replace her.

**ANSWER:**

Defendants admit that on or about December 9, 2020, Plaintiff received a performance review. Defendants deny the remaining allegations in Paragraph 1.10 of the Complaint.

**COMPLAINT ¶1.11:**

They intimidated Ms. Sullivan into silence. She feared what Defendants would do if she spoke up further. But staying in the background was insufficient. Their retaliation reached a crescendo a few months later, when they fired her.

**ANSWER:**

Defendants admit that AvtechTyee terminated Plaintiff's employment. Defendants lack knowledge or information to admit or deny what Plaintiff feared, and therefore deny that allegation. Defendants also deny the remaining allegations in Paragraph 1.11 of the Complaint.

**COMPLAINT ¶1.12:**

Ms. Sullivan is done being silenced and discriminatorily dismissed as an allegedly "aggressive" and "emotional" woman who Defendants criticized in gendered terms:

come across aggressive

employing more tact in her approach to difficult situations.

Her concerns that she raises are all certainly valid, for example the cost reductions of others organizations, but the approach to dealing with them needs to be more collaborative.

(Excerpts from Ms. Sullivan's December 2020 performance review)

**ANSWER:**

Defendants admit that Paragraph 1.12 contains excerpts from her December 2020 performance, but deny those are "gendered terms", deny any discriminatory or retaliatory animus or motive in Plaintiff's performance review, and deny the remaining allegations in Paragraph 1.12 of the Complaint.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 8

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

1  **COMPLAINT ¶1.13:**

2      Ms. Sullivan brings the following claims against Defendants: (1) retaliation under the

3  Sarbanes-Oxley Act, 18 U.S.C. §1514A; (2) race and gender discrimination under the Washington

4  Law Against Discrimination ("WLAD") and Title VII of the Civil Rights Act of 1964 ("Title VII");

5  and (3) common law wrongful discharge in violation of public policy.

6  **ANSWER:**

7      Defendants admit that Plaintiff asserts the claims referenced in Paragraph 1.13 of the

8  Complaint, but deny that they are liable to Plaintiff under any of those statutes or common law

9  claims.

10                          **II.      PARTIES**

11 **COMPLAINT ¶2.1:**

12     Ms. Sullivan is Defendants' former employee. At all relevant times to this Complaint, Ms.

13 Sullivan was assigned to and regularly worked out of Defendants' physical location at AvtechTyee

14 Headquarters, 6500 Merrill Creek Parkway, Everett, Washington 98203.

15 **ANSWER:**

16     Defendants admit that Plaintiff is a former employee of AvtechTyee, Inc., and that she

17 sometimes worked out of AvtechTyee's physical location at 6500 Merrill Creek Parkway, Everett,

18 Washington 98203.  Defendants deny the remaining allegations in Paragraph 1.12 of the Complaint.

19 **COMPLAINT ¶2.2:**

20     Defendant Transdigm Group Incorporated is incorporated in Delaware and is

21 headquartered in Ohio. Transdigm is a publicly traded company subject to the Sarbanes-Oxley Act.

22 Transdigm currently transacts business in the Western District of Washington. At all times relevant

23 hereto, Transdigm transacted business in the Western District of Washington, in Snohomish

24 County.

25

26

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

**ANSWER:**

Defendants deny that at all times relevant hereto TransDigm Group Incorporated transacted business in the Western District of Washington, in Snohomish County. Defendants also deny that TransDigm currently transacts business in the Western District of Washington. Defendants admit the remaining allegations in Paragraph 2.2 of the Complaint.

**COMPLAINT ¶2.3:**

Defendant AvtechTyee, Inc., is incorporated in Washington state and is headquartered in Everett, Washington. AvtechTyee is a wholly owned subsidiary of Transdigm. It is subject to the Sarbanes-Oxley Act. AvtechTyee currently transacts business in the Western District of Washington. At all times relevant hereto, AvtechTyee transacted business in the Western District of Washington, in Snohomish County.

**ANSWER:**

Defendants admit the allegations in Paragraph 2.3 in Complaint.

### III.   JURISDICTION AND VENUE

**COMPLAINT ¶3.1:**

This Court has federal question jurisdiction under 28 U.S.C. §1331 for claims brought under Title VII and Sarbanes Oxley. The Court has supplemental jurisdiction over the Washington state claims under 28 U.S.C. § 1367.

**ANSWER:**

For this case only, Defendants admit the Court has subject matter jurisdiction over Plaintiff's claims as alleged in Paragraph 3.1 of the Complaint.

**COMPLAINT ¶3.2:**

Venue is proper in the Western District of Washington at Seattle under 28 U.S.C. § 1391 because Defendants transact business in the Western District of Washington (including Snohomish County); Ms. Sullivan worked for Defendants in the Western District of Washington (Snohomish

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 10

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1  County); and a substantial part of the events that gave rise to this lawsuit occurred in the Western

2  District of Washington (Snohomish County).

3  **ANSWER:**

4      Defendants deny that TransDigm transacts business in the Western District of Washington,

5  including Snohomish County.  Defendants also deny that Plaintiff was jointly employed by both

6  TransDigm Group, Incorporated and AvtechTyee, Inc., but admit the remaining allegations in

7  Paragraph 3.2 of the Complaint.

8  **COMPLAINT ¶3.3:**

9      Ms. Sullivan satisfied the administrative requirements of the Sarbanes Oxley Act, 18 USC

10  § 1514A, by timely filing an October 29, 2021 Whistleblower Complaint with the United States

11  Department of Labor – Occupational Safety and Health Administration. (Case No. 01960-22-052).

12  Ms. Sullivan has exercised the "kick out" provisions of 18 USC § 1514A and this Complaint is

13  timely.

14  **ANSWER:**

15      Defendants admit the allegations in Paragraph 3.3 of the Complaint as to administrative

16  exhaustion of the administrative level, but deny the remaining allegations in Paragraph 3.3 of the

17  Complaint.

18  **COMPLAINT ¶3.4:**

19      Ms. Sullivan satisfied the administrative requirements of Title VII by timely filing a

20  February 28, 2022 Discrimination Charge with the United States Department of Labor - Equal

21  Employment Opportunity Commission. (Charge No. 551-2022-03195). The EEOC issued a Notice

22  of Right to Sue. And this Complaint was timely filed within 90 days thereafter.

23  **ANSWER:**

24      Defendants admit the allegations in Paragraph 3.4 of the Complaint as to administrative

25  exhaustion of the specific claims raised by Plaintiff at the administrative level, but deny the

26  remaining allegations in Paragraph 3.4 of the Complaint.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 11

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

94502345v.1

**IV.    INTRODUCTION REGARDING RETALIATION UNDER SARBANES OXLEY**

**COMPLAINT ¶4.1:**

History is littered with examples of corporate fraud. Corporate greed frequently devastates Average Janes and Joes. For example, after Enron perpetuated one of the biggest accounting frauds in US history, stock markets crashed and employees and shareholders lost billions.

**ANSWER:**

Defendants admit that there are historical examples of corporations committing fraud. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 4.1, and therefore deny those allegations.

**COMPLAINT ¶4.2:**

To help prevent the next Enron, Congress passed the Sarbanes-Oxley Act to help protect investors from fraudulent financial reporting. One way the law protects investors is by providing increased protections to employee whistleblowers. Sarbanes-Oxley recognizes that one of the best ways to prevent fraud is to ensure employees are empowered to speak up about possible shareholder fraud and violations of SEC regulations.



AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 12

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1  **ANSWER:**

2      Paragraph 4.2 contains legal conclusions and a purported summary of the Sarbanes-Oxley

3  Act, to which no response is required.  To the extent Paragraph 4.2 contains factual allegations,

4  Defendants deny the same.

5  **COMPLAINT ¶4.3:**

6      It is important to speak up because an employee who observes fraud may only be able to

7  see the tip of the iceberg. For example, where companies accelerate revenue at times where they

8  are short of financial goals, alarm bells should go off.

9  **ANSWER:**

10      Paragraph 4.3 contains legal conclusions or other assertions lacking factual allegations, to

11  which no response is required.  To the extent Paragraph 4.3 contains factual allegations,

12  Defendants deny the same.

13  **COMPLAINT ¶4.4:**

14      Companies can only stop fraud if they investigate and take employee concerns

15  seriously. But when companies instead foster a retaliatory culture that values greed over ethics,

16  fraud can grow into an Enron-like financial meltdown, devastating "Main Street."

17

18

19

20

21

22

23

24

25

26



AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 13

94502345v.1

Seyfarth Shaw LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1  **ANSWER:**

2      Paragraph 4.4 contains legal conclusions or other assertions lacking factual allegations, to

3  which no response is required.    To the extent Paragraph 4.4 contains factual allegations,

4  Defendants deny the same.

5            **V.    INTRODUCTION REGARDING DISCRIMINATION**

6  **COMPLAINT ¶5.1:**

7      Racial and gender biases also caused Ms. Sullivan's termination from employment. As the

8  jury will hear, scientific research indicates that discriminatory attitudes are common, even typical,

9  in 21st century America and further establishes that such attitudes often result in decisions harmful

10  to racial minorities and women.

11  **ANSWER:**

12      Defendants deny that racial and gender biases caused or in any way contributed to

13  Plaintiff's termination.    The remainder of Paragraph 5.1 contains legal conclusions or other

14  assertions lacking factual allegations, to which no response is required.    To the extent Paragraph

15  5.1 contains any additional factual allegations, Defendants deny the same.

16  **COMPLAINT ¶5.2:**

17      In today's workplace, there are many common and concrete patterns of discrimination

18  experienced by racial minorities and women.

19  **ANSWER:**

20      Paragraph 5.2 contains legal conclusions or other assertions lacking factual allegations, to

21  which no response is required.    Defendants expressly deny the allegations in Paragraph 5.2 with

22  respect to their own workplaces and employees, and specifically with respect to Plaintiff.    To the

23  extent Paragraph 5.2 contains any additional factual allegations, Defendants deny the same.

24  **COMPLAINT ¶5.3:**

25      One such pattern is expecting women and minorities to behave in deferential rather than

26  dominant ways. Women must be assertive, or they will face criticism as "poor leaders." But, if

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 14

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

they speak up, they are commonly criticized for being "aggressive," "shrill," or other gendered terms. This pattern of conflicting workplace expectations is sometimes called "Tightrope" bias because female employees must walk a tightrope that many males are not subject to:



**ANSWER:**

Defendants deny the allegations in Paragraph 5.3 with respect to their own workplaces and employees, and specifically with respect to Plaintiff.

**COMPLAINT ¶5.4:**

Another concrete pattern is requiring female and minority employees to provide more evidence of competence to be seen as equally competent (sometimes called "Prove It Again" bias). A woman is only as skilled as her last success. She must constantly prove her worth to be seen as equal to men. This double standard places women under greater stress and they are more likely to be ignored, interrupted, or criticized for communication.

**ANSWER:**

Defendants deny the allegations in Paragraph 5.4 with respect to their own workplaces and employees, and specifically with respect to Plaintiff.

**COMPLAINT ¶5.5:**

A third common and concrete pattern of discrimination is pervasive reliance on racial and gendered stereotypes. For example, Latinas face stereotypes about being lazy, stupid, and

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 15

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

unmotivated. Additionally, women are stereotyped as being poor fits for certain roles, including leadership and finance positions.

**ANSWER:**

Defendants deny the allegations in Paragraph 5.5 with respect to their own workplaces and employees, and specifically with respect to Plaintiff.

**COMPLAINT ¶5.6:**

It is as if these patterns of bias create an invisible escalator in the American workplace—allowing some employees to rise to positions of power, while racial minorities and women struggle to keep up despite working harder to prove themselves. This was Ms. Sullivan's experience.



**ANSWER:**

Defendants deny the allegations in Paragraph 5.6 with respect to their own workplaces and employees, and specifically with respect to Plaintiff.

**COMPLAINT ¶5.7:**

Ms. Sullivan endured each of these types of workplace discrimination during her employment. For example, before she reported financial irregularities, she received positive feedback. After Ms. Sullivan's whistleblowing conduct, her superiors dismissed her as an "aggressive" and "emotional" Latina woman. They immediately sought to replace her. No one investigated her reports of fraud or took her role as corporate financial supervisor seriously, despite her experience and training.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 16

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

**ANSWER:**

Defendants admit that Plaintiff received both positive and negative feedback throughout her employment with AvtechTyee. Defendants deny the remaining allegations in Paragraph 5.7.

**COMPLAINT ¶5.8:**

Under the law, it is unimportant whether an employer consciously intends to treat employees differently due to race or sex or simply does so because of unthinking stereotypes or bias.[5] Even well-intentioned people unknowingly act on biased attitudes. Discrimination law focuses on causation not on conscious motivation. Unwitting or ingrained bias is just as harmful and worthy of eradication as blatant or calculated discrimination.

**ANSWER:**

Paragraph 5.8 contains legal conclusions and opinions for which no response is required.

**COMPLAINT ¶5.9:**

Defendants treated Ms. Sullivan less favorably because of her protected characteristics. Stereotypes against Latinas and women substantially contributed to Ms. Sullivan's unlawful termination from employment. And the evidence in this case includes concrete patterns of bias against women and racial minorities common in the workplace. This is unlawful discrimination.

**ANSWER:**

Defendants deny the allegations in Paragraph 5.9 of the Complaint.

## VI.    FACTS

**A.    Defendants are subject to the Sarbanes Oxley Act.**

**COMPLAINT ¶6.1:**

Transdigm is a publicly traded corporation. (NYSE: TDG).

---

[5] *See, e.g., Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 29 (1st Cir. 1999) (applying stereotyping analysis of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) to race discrimination in employment).

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 17

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

1    **<u>ANSWER:</u>**

2        Defendants admit the allegations in Paragraph 6.1 of the Complaint.

3    **<u>COMPLAINT ¶6.2:</u>**

4        Transdigm issues a class of securities registered under section 12 of the Securities

5    Exchange Act of 1934.

6    **<u>ANSWER:</u>**

7        Defendants admit the allegations in Paragraph 6.2 of the Complaint.

8    **<u>COMPLAINT ¶6.3:</u>**

9        Transdigm is required to file reports under section 15(d) of the Securities Exchange Act of

10   1934.

11   **<u>ANSWER:</u>**

12       Defendants admit the allegations in Paragraph 6.3 of the Complaint.

13   **<u>COMPLAINT ¶6.4:</u>**

14       AvtechTyee's financial information is included in Transdigm's consolidated financial

15   statements.

16   **<u>ANSWER:</u>**

17       Defendants admit that some of AvtechTyee's financial information is included in

18   TransDigm's consolidated financial statements.

19   **<u>COMPLAINT ¶6.5:</u>**

20       Defendants are subject to regulation under the Sarbanes-Oxley Act, as well as the

21   Securities Exchange Act of 1934 as amended, of which the Sarbanes-Oxley Act is a part.

22   **<u>ANSWER:</u>**

23       Paragraph 6.5 of the Complaint contains legal conclusions for which no response is

24   required.  To the extent Paragraph 6.5 contains allegations of fact, Defendants deny the same.

25

26

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

**B.      Background regarding Ms. Sullivan's role at Defendants' Companies.**

**COMPLAINT ¶6.6:**

From an early age, Ms. Sullivan was passionate about math and accounting. Growing up in a home heated by a wood fire, her parents also raised her to pull herself up by her bootstraps and to do the right thing. Eventually, in ninth grade, she took her first accounting course. From that moment forward, she knew she wanted to work in finance. She worked hard to fulfill this dream, including working as a dishwasher and in retail to put herself through school.

**ANSWER:**

Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 6.6, and therefore deny those allegations.

**COMPLAINT ¶6.7:**

When Defendants hired Ms. Sullivan in 2018, she believed she had found her dream job. She started working as Controller for AvtechTyee, with Defendants later changing her job title to Vice President of Financial Reporting and subsequently to Vice President of Finance.

**ANSWER:**

Defendants admit that Plaintiff began her employment with AvtechTyee in 2018 as a Controller and further admit that Defendants changed Plaintiff's job title to Vice President of Financial Reporting, and later, Vice President of Finance.  Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff believed she found her dream job, and therefore deny that allegation.

**COMPLAINT ¶6.8:**

Company President Dave Bender recruited her to move to the Pacific Northwest and accept the top financial position. He had worked with Ms. Sullivan at prior companies and knew she would be excellent. He painted a picture for her of a financially strong company where she could eventually rise to become a company president. Ms. Sullivan looked forward to the challenge and hoped to establish a secure future for herself and her three children.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 19

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1  **ANSWER:**

2      Defendants lack sufficient knowledge or information to form a belief as to the truth of

3  whether Plaintiff looked forward to the challenges of working at AvtechTyee or hoped to establish

4  a secure future for herself and her three children, and therefore deny those allegations.  Defendants

5  admit that Mr. Bender recruited Plaintiff and that he had worked with her at a prior company.

6  Defendants deny the remaining allegations in Paragraph 6.8 of the Complaint.

7  **C.    Ms. Sullivan, a hardworking and skilled employee, receives positive feedback until
8          she forcefully challenges fraudulent financial practices.**

9  **COMPLAINT ¶6.9:**

10      During her employment at Defendants, Ms. Sullivan met the expectations for her role. Her

11  duties included monitoring and approving AvtechTyee's accounting practices, financial reporting,

12  and its GAAP compliance.  Generally Accepted Accounting Principles (GAAP) makes the

13  financial reporting process transparent and standardized allowing for quick and accurate cross-

14  company comparisons.

15  **ANSWER:**

16      Defendants admit part of Plaintiff's work duties included monitoring and approving

17  AvtechTyee's accounting practices, financial reporting, and its GAAP compliance.  Defendants

18  deny the remaining allegations in Paragraph 6.9 of the Complaint.

19  **COMPLAINT ¶6.10:**

20      Ms. Sullivan is a Certified Public Accountant (CPA) who is governed by state licensing

21  requirements for continuing education.

22  **ANSWER:**

23      Defendants admit that Plaintiff purports to be a Certified Public Accountant (CPA) who is

24  governed by state licensing requirements for continuing education.

25

26

Seyfarth Shaw LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1  **COMPLAINT ¶6.11:**

2  She excelled at her job because of her hardworking nature, tireless commitment, and

3  abilities.

4  **ANSWER:**

5  Defendants deny the allegations in Paragraph 6.11 of the Complaint.

6  **COMPLAINT ¶6.12:**

7  In December 2019, President Bender provided Sullivan a positive performance review.

8  President Bender rated Ms. Sullivan as a 4, which under AvtechTyee's rating system "exceeds

9  expectations."

10  **ANSWER:**

11  Defendants admit that Plaintiff's December 2019 performance review contained an overall

12  rating of "4" exceeds.  Defendants deny the remaining allegations in Paragraph 6.12 of the

13  Complaint as stated.

14  **COMPLAINT ¶6.13:**

15  Until December 2020, Defendants provided Ms. Sullivan with only positive performance

16  reviews.

17  **ANSWER:**

18  Defendants deny the allegations in Paragraph 6.13 of the Complaint.

19  **COMPLAINT ¶6.14:**

20  As described below, however, Defendants' tone shifted sharply negative after Ms. Sullivan

21  reported that AvtechTyee was falsely and unlawfully inflating revenue.

22  **ANSWER:**

23  Defendants deny the allegations in Paragraph 6.14 of the Complaint.

24

25

26

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 21

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

**D.    Based on a series of transactions, Ms. Sullivan eventually concludes that AvtechTyee is fraudulently manipulating revenue.**

**COMPLAINT ¶6.15:**

During her employment, Ms. Sullivan observed that AvtechTyee repeatedly engaged in financial practices that violated revenue recognition standards and GAAP, including ASC 606.

**ANSWER:**

Defendants deny the allegations in Paragraph 6.15 in the Complaint.

**COMPLAINT ¶6.16:**

Ms. Sullivan knew that repeatedly violating revenue recognition standards and GAAP is a strong indicator that companies are fraudulently misstating revenue. For example, most SEC enforcement actions involve situations where companies accelerate revenue recognition when they are short of their targets or delay revenue recognition when they have already met their targets. That is exactly what Ms. Sullivan observed at AvtechTyee.

**ANSWER:**

Defendants deny that Plaintiff observed revenue recognition violations at AvtechTyee. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 6.16, and therefore deny those allegations.

**COMPLAINT ¶6.17:**

By way of illustrative example, during Ms. Sullivan's employment AvtechTyee:

**ANSWER:**

Paragraph 6.17 does not require a response.

**COMPLAINT ¶6.17.1:**

Ignored the safety objections of AvtechTyee engineers and shipped an unfinished airplane component to Lockheed Martin with the intent of falsely accelerating hundreds of thousands of dollars in revenue.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 22

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1    **ANSWER:**

2       Defendants deny the allegations in Paragraph 6.17.1.

3    **COMPLAINT ¶6.17.2:**

4       Falsely claimed revenue in the hundreds of thousands of dollars on a Boeing project, even

5    though a product had never been delivered to Boeing or invoiced to Boeing;

6    **ANSWER:**

7       Defendants deny the allegations in Paragraph 6.17.2.

8    **COMPLAINT ¶6.17.3:**

9       Tracked work orders in a way that resulted in at least hundreds of thousands of dollars in

10   improperly recognized revenue.

11   **ANSWER:**

12      Defendants deny the allegations in Paragraph 6.17.3.

13   **COMPLAINT ¶6.17.4:**

14      Failed to account for product returns, and at other times accounted for product returns at

15   times where AvtechTyee had already met their quarterly targets, resulting in at least hundreds of

16   thousands of misstated revenue;

17   **ANSWER:**

18      Defendants deny the allegations in Paragraph 6.17.4.

19   **COMPLAINT ¶6.17.5:**

20      Continued intentionally misstating revenue despite Ms. Sullivan repeatedly correcting

21   these issues.

22   **ANSWER:**

23      Defendants deny the allegations in Paragraph 6.17.5.

24   **COMPLAINT ¶6.17.6:**

25      Accelerated significant revenue at times that were beneficial to AvtechTyee's bottom line

26   and/or bonuses for corporate executives.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 23

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1    **ANSWER:**

2        Defendants deny the allegations in Paragraph 6.17.6.

3    **COMPLAINT ¶6.17.7:**

4        Delayed significant revenue at times where AvtechTyee had already hit their targets.

5    **ANSWER:**

6        Defendants deny the allegations in Paragraph 6.17.7.

7    **COMPLAINT ¶6.18:**

8        Based on AvtechTyee's pattern of repeatedly misstating revenue, Ms. Sullivan eventually

9    concluded that AvtechTyee, through Sales VP Kevin Hanson, was fraudulently misstating revenue

10   to inflate revenue and achieve bonuses for corporate executives. The companies tied bonuses for

11   executives to achieving revenue targets at regular intervals.

12   **ANSWER:**

13       Defendants lack sufficient knowledge or information to form a belief as to the truth of what

14   Plaintiff concluded about AvtechTyee's revenue statements, and therefore deny that allegation.

15   Defendants deny the remaining allegations in Paragraph 6.18 of the Complaint.

16   **COMPLAINT ¶6.19:**

17       Ms. Sullivan wanted AvtechTyee to investigate the revenue reporting practices of Sales

18   VP Hanson and others.

19   **ANSWER:**

20       Defendants lack sufficient knowledge or information to form a belief as to the truth of the

21   allegations in Paragraph 6.19, and therefore deny that allegation.

22   **COMPLAINT ¶6.20:**

23       Ms. Sullivan worried that what she had uncovered was only the tip of the iceberg.

24   **ANSWER:**

25       Defendants lack sufficient knowledge or information to form a belief as to the truth of the

26   allegations in Paragraph 6.20, and therefore deny that allegation.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 24

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

**COMPLAINT ¶6.21:**

But Ms. Sullivan also feared Defendants' retaliatory culture.

**ANSWER:**

Defendants lack sufficient knowledge or information to confirm or deny what Plaintiff feared, and therefore deny that allegation. Defendants deny that there was a retaliatory culture at AvtechTyee or TransDigm Group.

**E.    In November 2020, Ms. Sullivan reports apparent shareholder fraud to President Bender.**

**COMPLAINT ¶6.22:**

Despite her fear of retaliation, in November 2020, Ms. Sullivan reported Sales VP Hanson to President Bender.

**ANSWER:**

Defendants admit that in November 2020, Plaintiff asked AvtechTyee's President, Dave Bender, about an outstanding balance due on a Boeing invoice for a Wedgetail NRE. Defendants lack sufficient knowledge or information to form a belief as to the truth of Plaintiff's alleged fear, and therefore deny that allegation.

**COMPLAINT ¶6.23:**

Ms. Sullivan had questioned and challenged Sales VP Hanson's revenue recognition practices before November 2020. Yet, his troubling practices continued and he became hostile to Ms. Sullivan.

**ANSWER:**

Defendants deny the allegations in Paragraph 6.23 of the Complaint.

**COMPLAINT ¶6.24:**

This time, Ms. Sullivan was firm. In her report to President Bender, she accused Hanson of intentionally and unlawfully inflating and deflating revenue. In other words, she reported to President Bender that Hanson was engaged in intentional fraud.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 25

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

1

**ANSWER:**

2

Defendants deny the allegations in Paragraph 6.24 of the Complaint.

3

**COMPLAINT ¶6.25:**

4

Sales VP Hanson was treated as successful and influential within the company. But Ms.

5

Sullivan had to say something.

6

**ANSWER:**

7

Defendants lack sufficient knowledge or information to form a belief as to the truth of the

8

first sentence in Paragraph 6.25 because it is vague, except to admit that Kevin Hanson was

9

successful in his role as Vice President of Sales at AvtechTyee. Defendants also lack sufficient

10

knowledge or information to form a belief as to the truth of the remaining allegation in Paragraph

11

6.25, and therefore deny that allegation.

12

**COMPLAINT ¶6.26:**

13

Ms. Sullivan had hoped that President Bender would be an ally. She hoped that he would

14

help her stand up against Transdigm's golden boy, Sales VP Hanson. But she was sorely

15

disappointed.

16

**ANSWER:**

17

Defendants lack sufficient knowledge or information to form a belief as to the truth of the

18

allegations in Paragraph 6.26, and therefore deny those allegations.

19

**COMPLAINT ¶6.27:**

20

Instead of taking Ms. Sullivan's report seriously, President Bender instructed Ms. Sullivan

21

to keep quiet. She was not to have any communication about the issue of revenue timing with

22

Transdigm's Group Controller or anyone else, unless Bender reviewed and approved the

23

communication. President Bender's instruction was a gag order and a threat to her job.

24

**ANSWER:**

25

Defendants deny the allegations in Paragraph 6.27 of the Complaint.

26

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 26

94502345v.1

Seyfarth Shaw LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

**COMPLAINT ¶6.28:**

It was clear to her from the President's response that this was no accident.

**ANSWER:**

Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 6.28, and therefore deny those allegations.

**COMPLAINT ¶6.29:**

Based on information and belief, Defendants never took any action to investigate Sales VP Hanson or his scheme to engage in shareholder fraud, even though Defendants acknowledged that Sales VP Hanson's actions were suspicious and wrong.

**ANSWER:**

Defendants deny the allegations in Paragraph 6.29 of the Complaint.

**F.    Defendants immediately retaliate against Ms. Sullivan and criticize her in discriminatory terms.**

**COMPLAINT ¶6.30:**

After Ms. Sullivan reported Sales VP Hanson's fraudulent scheme to President Bender, Defendants began retaliating against Ms. Sullivan.

**ANSWER:**

Defendants deny the allegations in Paragraph 6.3 of the Complaint.

**COMPLAINT ¶6.31:**

By way of illustrative example, President Bender retaliated against Ms. Sullivan by becoming rude and ostracizing her.

**ANSWER:**

Defendants deny the allegations in Paragraph 6.31 of the Complaint.

**COMPLAINT ¶6.32:**

Additionally, within weeks of her November 2020 report, President Bender provided Ms. Sullivan a retaliatory performance review.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 27

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1  **ANSWER:**

2      Defendants admit that on or about December 9, 2020, Mr. Bender issued an annual

3  performance review for Plaintiff, but Defendants deny that the performance review was retaliatory.

4  **COMPLAINT ¶6.33:**

5      President Bender reduced Ms. Sullivan's score to 2.8, which under AvtechTyee's rating

6  system is a "marginal" rating.

7  **ANSWER:**

8      Defendants admit that Plaintiff's December 2020 performance review contained an overall

9  rating of "2.8" marginal.  Defendants deny the remaining allegations in Paragraph 6.33 of the

10  Complaint as stated.

11  **COMPLAINT ¶6.34:**

12      That performance review contained sexist and discriminatory buzz words regarding

13  minority women that speak up: "can come across aggressive;" needs "more tact;" and needs to be

14  "more collaborative" when raising concerns.

15  **ANSWER:**

16      Defendants deny the allegations in Paragraph 6.34 of the Complaint.

17  **COMPLAINT ¶6.35:**

18      Around the same time, President Bender also verbally criticized Ms. Sullivan using sexist

19  terms, calling her too "emotional" when she raised concerns.

20  **ANSWER:**

21      Defendants deny the allegations in Paragraph 6.35 of the Complaint.

22  **COMPLAINT ¶6.36:**

23      Ms. Sullivan refused to sign the performance review because she believed that it was

24  retaliatory.

25

26

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 28

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1

**ANSWER:**

2

Defendants admit that Plaintiff refused to sign the performance review, but lack sufficient

3

knowledge or information to form a belief as to the truth regarding the reasons for Plaintiff's

4

refusal, and therefore deny that allegation.

5

**COMPLAINT ¶6.37:**

6

Within weeks of Ms. Sullivan's November 2020 report of fraud, AvtechTyee also retaliated

7

against Ms. Sullivan by posting her job position online. Ms. Sullivan saw the advertisement with

8

her own eyes. She was devastated.

9

**ANSWER:**

10

Defendants admit that AvtechTyee began a search for Plaintiff's replacement after

11

observing numerous and repeated issues with Plaintiff's performance, before and after she told Mr.

12

Bender about an outstanding balance due on a Boeing invoice for a Wedgetail NRE.  Defendants

13

lack sufficient knowledge or information to form a belief as to the truth of the allegations regarding

14

what Plaintiff saw and what her reaction was, and therefore deny those allegations.  Defendants

15

deny the remaining allegations in Paragraph 6.37 of the Complaint.

16

**COMPLAINT ¶6.38:**

17

Around this time, Ms. Sullivan also raised concerns to AvtechTyee Human Resources

18

Director Jean Williams that she was being evaluated negatively because she had reported Sales

19

VP Hanson for intentionally inflating revenue. Rather than act on her allegation of retaliation, HR

20

Director Williams called Ms. Sullivan a "crybaby."

21

**ANSWER:**

22

Defendants deny the allegations in Paragraph 6.38 of the Complaint.

23

**COMPLAINT ¶6.39:**

24

After November 2020, President Bender and Sales VP Hanson began to turn up the heat,

25

including making racist jokes about Mexicans, even though they knew Sullivan was Mexican. For

26

example, with Ms. Sullivan present, they called Mexico the "dark basement" of the United States.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 29

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1    **ANSWER:**

2        Defendants deny the allegations in Paragraph 6.39 of the Complaint.

3    **COMPLAINT ¶6.40:**

4        In May 2021, Defendants hired Ms. Sullivan's replacement, a white male.

5    **ANSWER:**

6        Defendants admit that in May 2021, AvtechTyee hired Plaintiff's replacement, a white

7    male, but Defendants deny the remaining allegation in Paragraph 6.40 of the Complaint.

8    **COMPLAINT ¶6.41:**

9        Then, that same month, Defendants retaliated and discriminated against Ms. Sullivan by

10   terminating her employment. Upon information and belief, personnel at Transdigm and

11   AvtechTyee jointly approved her termination.

12   **ANSWER:**

13       Defendants admit that AvtechTyee terminated Plaintiff's employment effective May 7,

14   2021, but deny the remaining allegations in Paragraph 6.41 of the Complaint.

15   **COMPLAINT ¶6.42:**

16       Based on information and belief, Defendants treated employees who actually had

17   significant performance struggles, but did not speak up about securities fraud and/or were not

18   Latina women, more favorably. Defendants fired Ms. Sullivan, even though she met and exceeded

19   the expectations for her role. In contrast, Defendants allowed struggling employees to continue

20   their employment.

21   **ANSWER:**

22       Defendants deny the allegations in Paragraph 6.42 of the Complaint.

23   **COMPLAINT ¶6.43:**

24       Ms. Sullivan sought an explanation for why she was being fired. Defendants, however,

25   refused to give her any explanation.

26

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 30

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1  **ANSWER:**

2      Defendants deny the allegations in Paragraph 6.43 of the Complaint.

3  **COMPLAINT ¶6.44:**

4      For example, in June 2021, when Ms. Sullivan again asked why her employment had ended,

5  AvtechTyee refused to provide a "stated reason beyond voluntary versus involuntary."

6  **ANSWER:**

7      Defendants admit the allegations in Paragraph 6.44 of the Complaint, but deny that all at

8  times they refused to provide Plaintiff with an explanation.

9  **COMPLAINT ¶6.45:**

10      State law requires giving a reason for termination upon request. The jury may infer that the

11  real reason for termination was unlawful.

12  **ANSWER:**

13      Paragraph 6.45 sets forth legal conclusions for which no response is required. To the extent

14  Paragraph 6.45 contains factual allegations, Defendants deny the same.

15  **COMPLAINT ¶6.46:**

16      While Ms. Sullivan lost her job for reporting fraud, the person responsible for that fraud

17  suffered no apparent consequences. In fact, in October 2021, Transdigm promoted Sales VP

18  Hanson to President of Korry Electronics, another wholly owned subsidiary of Transdigm.

19  **ANSWER:**

20      Defendants admit Mr. Hanson became President of Korry Electronics Co., in October 2021.

21  Defendants deny the remaining allegations in Paragraph 6.46 of the Complaint.

22  **COMPLAINT ¶6.47:**

23      Defendants chose greed and short-term profits over what was right.

24  **ANSWER:**

25      Defendants deny the allegations in Paragraph 6.47 of the Complaint.

26

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 31

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

**G.    Defendants jointly employed Ms. Sullivan.**

**COMPLAINT ¶6.48:**

At all relevant times hereto, Defendants jointly employed Ms. Sullivan.

**ANSWER:**

Defendants deny the allegations in Paragraph 6.48 of the Complaint.

**COMPLAINT ¶6.49:**

Before Ms. Sullivan could be hired as AvtechTyee's Controller/VP of Finance, she interviewed with Transdigm's Group Controller and a Transdigm Executive VP.

**ANSWER:**

Defendants admit that TransDigm's Group Controller participated in Plaintiff's interview process. Defendants deny the remaining allegations in Paragraph 6.49 as stated.

**COMPLAINT ¶6.50:**

Based on information and belief, Transdigm had the power to approve and/or reject the hiring of Ms. Sullivan as AvtechTyee's Controller/VP of Financial Reporting.

**ANSWER:**

Defendants deny the allegations in Paragraph 6.50.

**COMPLAINT ¶6.51:**

AvtechTyee President Dave Bender supervised Ms. Sullivan.

**ANSWER:**

Defendants admit the allegations in Paragraph 6.51.

**COMPLAINT ¶6.52:**

Transdigm's Group Controller also supervised Ms. Sullivan.

**ANSWER:**

Defendants deny the allegations in Paragraph 6.52.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 32

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1

**COMPLAINT ¶6.53:**

2

Ms. Sullivan was subject to numerous AvtechTyee and Transdigm policies and job

3

requirements, including the Transdigm Business Conduct and Ethics Policy.

4

**ANSWER:**

5

Defendants admit Plaintiff was subject to numerous AvtechTyee policies and job

6

requirements and was also subject to the TransDigm Business Conduct and Ethics Policy.

7

Defendants deny the remaining allegation in Paragraph 6.53 of the Complaint.

8

**COMPLAINT ¶6.54:**

9

AvtechTyee and Transdigm provided Ms. Sullivan with job training.

10

**ANSWER:**

11

Defendants admit the allegations in Paragraph 6.54 of the Complaint.

12

**COMPLAINT ¶6.55:**

13

Ms. Sullivan's performance reviews were conducted on Transdigm's letterhead.

14

**ANSWER:**

15

Defendants deny the allegations in Paragraph 6.55 of the Complaint.

16

**COMPLAINT ¶6.56:**

17

Transdigm (including Transdigm's Group Controller) regularly assigned Ms. Sullivan day-

18

to-day work, including setting due dates on work assignments.

19

**ANSWER:**

20

Defendants deny the allegations in Paragraph 6.56 of the Complaint.

21

**COMPLAINT ¶6.57:**

22

Transdigm, including its Group Controller, provided feedback about Ms. Sullivan's

23

performance.

24

**ANSWER:**

25

Defendants admit the allegations Paragraph 6.57 of the Complaint.

26

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1

**COMPLAINT ¶6.58:**

2    Based on information and belief, Transdigm had the ability to discipline or fire

3    Ms. Sullivan.

4    **ANSWER:**

5    Defendants deny the allegations in Paragraph 6.58 of the Complaint.

6    **COMPLAINT ¶6.59:**

7    In the alternative, Transdigm and AvtechTyee are Ms. Sullivan's employer under a single

8    employer theory. Based on information and belief, Defendants are so integrated in their operations

9    that they are effectively one employer. Based on information and belief, despite claiming

10   AvtechTyee is an "independent company," in truth Defendants have heavily integrated operations.

11   Upon information and belief, Transdigm exercises management control over AvtechTyee, and

12   Defendants share centralized control of labor relations.

13   **ANSWER:**

14   Paragraph 6.59 sets forth a legal conclusion for which no response is required.  To the

15   extent a response is required, Defendants deny the allegations in Paragraph 6.59 of the Complaint.

16   ## VII.    FIRST & SECOND CAUSES OF ACTION:

17   ### RACE AND GENDER DISCRIMINATION IN VIOLATION OF THE WLAD AND
     TITLE VII
18   **(Against all Defendants)**

19   **COMPLAINT ¶7.1:**

20   Plaintiff realleges the Paragraphs above as if fully set forth herein.

21   **ANSWER:**

22   Defendants incorporate and adopt all their responses/answers asserted above as though

23   fully set forth herein.

24   **COMPLAINT ¶7.2:**

25   Ms. Sullivan is a Latina woman.

26

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 34

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

**ANSWER:**

Defendants admit the allegations in 7.2 of the Complaint.

**COMPLAINT ¶7.3:**

Ms. Sullivan's race and gender was a substantial factor in the termination of her employment at Defendants. Defendants also fired Ms. Sullivan because of her race and gender.

**ANSWER:**

Defendants deny the allegations in Paragraph 7.3 of the Complaint.

**COMPLAINT ¶7.4:**

Ms. Sullivan was qualified for her position when Defendants fired her.

**ANSWER:**

Defendants deny the allegations in Paragraph 7.4 of the Complaint.

**COMPLAINT ¶7.5:**

Defendants violated the WLAD and Title VII when they terminated Ms. Sullivan's employment.

**ANSWER:**

Defendants deny the allegations in Paragraph 7.5 of the Complaint.

**COMPLAINT ¶7.6:**

As a direct result of Defendants' unlawful conduct, Ms. Sullivan has suffered and continues to suffer lost wages and pecuniary benefits of her employment, future lost earnings, and emotional harm, including grief, loss of enjoyment of life, damage to reputation, fear, anxiety, anguish, embarrassment, humiliation, and other damages in amounts to be proved at trial. These harms are ongoing and are reasonably likely to be experienced in the future.

**ANSWER:**

Defendants deny the allegations in Paragraph 7.6 of the Complaint.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 35

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

## VIII.   THIRD CAUSE OF ACTION:

### RETALIATION IN VIOLATION OF SARBANES-OXLEY ACT (Against all Defendants)

**COMPLAINT ¶8.1:**

Plaintiff realleges the Paragraphs above as if fully set forth herein.

**ANSWER:**

Defendants incorporate and adopt all their responses/answers asserted above as though fully set forth herein.

**COMPLAINT ¶8.2:**

Ms. Sullivan engaged in protected conduct when, among other things, she provided information to her supervisor, President Bender, regarding conduct that she reasonably believed constituted securities fraud and any provision of federal law relating to shareholder fraud. Namely, she reported to President Bender that Sales VP Hanson was intentionally violating GAAP and intentionally reporting revenue incorrectly to falsely inflate AvtechTyee's revenue and end-of-quarter financial numbers.

**ANSWER:**

Defendants deny the allegations in Paragraph 8.2 of the Complaint.

**COMPLAINT ¶8.3:**

Ms. Sullivan also engaged in protected conduct when, among other things, she provided information to her direct supervisor, President Bender, regarding conduct that she reasonably believed violated an SEC rule or regulation, including without limitation SEC regulations providing that (1) financial statements which are not prepared in accordance with GAAP, including ASC 606, are presumptively misleading or inaccurate, 17 C.F.R. § 210.4– 01(a)(1); and (2) publicly traded companies must comply with standards published by the Financial Accounting Standards Board, including ASC 606. SEC Commission Guidance Regarding Revenue Recognition for Bill-and-Hold Arrangements; SEC Topic 11, 11100 New Revenue Standard (FASB ASC Topic 606).

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 36

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1  **ANSWER:**

2    Defendants deny the allegations in Paragraph 8.3 of the Complaint.

3  **COMPLAINT ¶8.4:**

4    Ms. Sullivan suffered an adverse action, including without limitation the termination of her

5  employment.

6  **ANSWER:**

7    Defendants admit that Plaintiff's employment was terminated, but deny that her

8  employment was terminated for any unlawful reason(s).

9  **COMPLAINT ¶8.5:**

10    A contributing factor in the termination of Ms. Sullivan's employment was her protected

11  conduct.

12  **ANSWER:**

13    Defendants deny the allegations in Paragraph 8.5 in the Complaint.

14  **COMPLAINT ¶8.6:**

15    As a direct result of Defendants' unlawful conduct, Ms. Sullivan has suffered and continues

16  to suffer lost wages and pecuniary benefits of her employment, future lost earnings, and emotional

17  harm, including grief, loss of enjoyment of life, damage to reputation, fear, anxiety, anguish,

18  embarrassment, humiliation, and other damages in amounts to be proved at trial. These harms are

19  ongoing and are reasonably likely to be experienced in the future.

20  **ANSWER:**

21    Defendants deny the allegations in Paragraph 8.6 of the Complaint.

22  

**IX.    FOURTH CAUSE OF ACTION:**

23
**WRONGFUL DISCHARGE (COMMON LAW)**
**(Against all Defendants)**

24  **COMPLAINT ¶9.1:**

25    Plaintiff realleges the Paragraphs above as if fully set forth herein.

26

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 37

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

1  **ANSWER:**

2      Defendants incorporate and adopt all their responses/answers asserted above as through

3  fully set forth herein.

4  **COMPLAINT ¶9.2:**

5      A substantial factor motivating Defendants' termination of Ms. Sullivan's employment

6  was her reporting what she reasonably believed to be Defendants' unlawful misconduct, including

7  without limitation Ms. Sullivan reporting shareholder fraud.

8  **ANSWER:**

9      Defendants deny the allegations in Paragraph 9.2 of the Complaint.

10  **COMPLAINT ¶9.3:**

11      Defendants' termination of Ms. Sullivan's employment violated a clear mandate of public

12  policy, including without limitation clear public policies requiring honesty in financial reporting

13  of publicly traded companies.

14  **ANSWER:**

15      Defendants deny the allegations in Paragraph 9.3 of the Complaint.

16  **COMPLAINT ¶9.4:**

17      As a direct result of Defendants' unlawful conduct, Ms. Sullivan has suffered and continues

18  to suffer lost wages and pecuniary benefits of her employment, future lost earnings, and emotional

19  harm, including grief, loss of enjoyment of life, damage to reputation, fear, anxiety, anguish,

20  embarrassment, humiliation, and other damages in amounts to be proved at trial. These harms are

21  ongoing and are reasonably likely to be experienced in the future.

22  **ANSWER:**

23      Defendants deny the allegations in Paragraph 9.4 of the Complaint.

24  **X.    PRAYER FOR RELIEF**

25      WHEREFORE, Plaintiff prays that the Court enter judgment against Defendants, awarding

26  her:

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 38

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

1.      Expungement of any negative entries to Ms. Sullivan's personnel file and any other derogatory information that may have been placed in Ms. Sullivan's employment file by Defendants;

2.      Posting a notice to Defendants' employees indicating that Defendants have been ordered to comply with the whistleblower provisions of the Sarbanes-Oxley Act and pay Ms. Sullivan damages due to Defendants' unlawful treatment;

3.      Lost wages, including front and back pay, lost bonuses, and lost medical and retirement benefits, and other lost pecuniary benefits of employment, in an amount to be proven at trial;

4.      Compensatory damages for emotional harm in an amount to be proven at trial;

5.      Punitive damages;

6.      Reasonable attorneys' fees, expert witness fees, and costs pursuant to, among other statutes, RCW 49.60.030(2) and 49.48.030, Sarbanes Oxley, Title VII, and any other basis allowed by law;

7.      Pre- and post-judgment interest at the maximum rate allowed by law;

8.      Damages to make up for any adverse tax consequences for any award to Ms. Sullivan; and

9.      Such other relief as this Court may deem appropriate.

**ANSWER:**

Defendants admit that Plaintiff seeks the relief requested in her Prayer for Relief, but deny that Plaintiff is entitled to any relief.


**Ms. Sullivan hereby demands a jury trial on all of the issues set forth herein.**

**ANSWER:**

Defendants admit that Plaintiff requests a jury trial.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 39

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1

## **AFFIRMATIVE AND OTHER DEFENSES**

2

In asserting these defenses, Defendants do not assume the burden of proof on any matters

3

for which Plaintiff rightfully bears the burden of proof. In addition, Defendants are continuing to

4

investigate Plaintiff's allegations and, therefore, reserve the right to amend their Answer and

5

Affirmative Defenses.

6

7

1.      Defendant TransDigm Group, Inc. was not Plaintiff's employer (nor a joint

8

employer with AvtechTyee, Inc.), and therefore cannot be held liable. Plaintiff was employed

9

solely by AvtechTyee, Inc. Among other facts supporting this defense, AvtechTyee, Inc. and

10

TransDigm Group, Inc. are distinct entities that are not under common management, ownership,

11

or control. Labor  and labor relations and personnel for each entity are distinct.  Further,

12

TransDigm Group, Inc. did not hire or fire Plaintiff, did not supervise Plaintiff, did not provide her

13

with ongoing training, did not  or discipline her, did not control her daily activities, did not pay

14

Plaintiff or provide her benefits, and did not maintain Plaintiff's employment records. Additional

15

facts supporting this defense include (without limitation) Defendants' responses to the following

16

paragraphs of Plaintiff's complaint: Paragraph Nos. 1.5, 6.7, 6.41, 6.48, 6.5, 6.52, 6.55, 6.56, and

17

6.58.

18

19

2.      Plaintiff is barred and/or estopped from obtaining relief by her own conduct, acts,

20

omissions, and unclean hands.  Among other facts supporting this defense, Plaintiff is barred

21

and/or estopped from obtaining relief due to the her ongoing poor job performance, which included

22

(without limitation) (i) being late providing information needed for both internal and external

23

audits, presidents' letters, and consolidated financial reporting; and (ii) making errors that

24

demonstrated a lack of attention-to-detail, such as failing to enter a lease amendment into

25

26

---

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 40

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

AvtechTyee's lease software, which resulted in an understatement of $218,000 of rent expenses. Additional facts supporting this defense include (without limitation) Defendants' responses to the following paragraphs of Plaintiff's complaint: Paragraph Nos. 6.13, 6.37, and 7.4.

3.    Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations. The allegations in Plaintiff's complaint (including, without limitation, Paragraph Nos. 5.3, 5.4, 5.5, 5.6, 5.7, 5.9, 6.17.4, 6.17.5, 6.17.6, and 6.17.7) appear to exceed the scope of her complaints to the Occupational Safety and Health Administration and the Equal Employment Opportunity Commission, both in terms of subject matter and temporal scope.  To the extent Plaintiff's claims exceed the subject-matter and/or temporal scope of her complaints to the Occupational Safety and Health Administration and the Equal Employment Opportunity Commission and are subject to a requirement to exhaust administrative remedies, her claims are barred by the applicable statute of limitations.

4.    To the extent Plaintiff alleges that any individual made discriminatory comments (including the comments Plaintiff attributes to Mr. Bender and/or Mr. Hanson) or otherwise acted in an unlawful manner, which Defendants deny, such conduct, if it occurred, was outside of the course and scope of that individual's employment.  Defendants neither engaged in the purported discrimination or retaliation, nor aided or abetted it, nor authorized, encouraged, condoned, ratified, acquiesced, tolerated, or approved of any such conduct against Plaintiff, and instead prohibited any such acts, and any such conduct may not be attributed to Defendants through principles of agency, respondent superior, or otherwise, as nobody (including, without limitation, Mr. Bender and/or Mr. Hanson) had express or implied authority to discriminate or retaliate against Plaintiff and it would have been against Defendants' policies for them to do so.

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 41

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

5.      The allegations in Plaintiff's complaint (including, without limitation, Paragraph Nos. 5.3, 5.4, 5.5, 5.6, 5.7, 5.9, 6.17.4, 6.17.5, 6.17.6, and 6.17.7) appear to exceed the subject-matter scope of her complaints to the Occupational Safety and Health Administration and the Equal Employment Opportunity Commission. To the extent Plaintiff failed to exhaust her administrative remedies or failed to comply with any procedural prerequisites with regard to any of her claims (or any portion of her claims) prior to bringing her claims in this action, this Court lacks subject matter jurisdiction over such claims or such claims are otherwise barred.

6.      To the extent Plaintiff's claims exceed the scope of the charges of discrimination she filed with the United States Department of Labor, Occupational Safety and Health Administration, the Equal Employment Opportunity Commission, or any other state or federal agency, this Court lacks subject matter jurisdiction over such claims or such claims are otherwise barred, for the same reasons stated in paragraph 5 *supra*.

7.      Defendants aver that even if some impermissible motives (including Plaintiff's purported protected activity) were a factor in any employment decision concerning Plaintiffs, a claim that Defendants expressly deny, Defendants would have made the same employment decision(s) for legitimate business reasons (including, without limitation, Plaintiff's ongoing poor performance as described *supra*) regardless of Plaintiff's protected status or alleged complaints. Additional facts supporting this defense include (without limitation) Defendants' responses to the following paragraphs of Plaintiff's complaint: Paragraph Nos. 6.13, 6.37, and 7.4.

8.      Plaintiff has failed to adequately mitigate any purported damages she may have suffered and is barred, in whole or in part, from recovering damages. Plaintiff was terminated effective May 7, 2021 yet she alleges that *nearly two years later* she "continues to suffer lost wages

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

and pecuniary benefits of her employment, future lost earnings, and emotional harm." Upon information belief, if Plaintiff were making a good faith effort to mitigate her damages, she would have secured commensurate employment within two years of her termination.

9.    Plaintiff is not entitled to punitive damages because she can neither demonstrate malice or reckless indifference by Defendants, nor can she impute liability for punitive damages to Defendants because of Defendants' good faith efforts to comply with all applicable anti-discrimination and anti-retaliation laws (those efforts include, without limitation, promulgating anti-discrimination and anti-retaliation policies; training managers with regard to those policies; investigating alleged violations of those policies; and enforcing those policies) and because Defendants did not willfully violate any such applicable laws.

Defendants presently have insufficient knowledge and information upon which to form a belief about whether they have additional defenses. Accordingly, Defendants reserve the right to assert additional defenses as they become known during the course of this litigation, and hereby specifically reserve the right to amend this Answer for the purpose of asserting additional defenses.

[Signature page follows]

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted April 26, 2023.

SEYFARTH SHAW LLP

By: __/ s Emma Kazaryan_____
Lauren Parris Watts (SBN 44064)
Esteban Shardonofsky (SBN 24051323)
Darien Harris (SBN 24118405)
Emma Kazaryan (SBN, 49885)
999 Third Avenue, Suite 4700
Seattle, Washington 98104-4041
Telephone: (206) 946-4910
lpwatts@seyfarth.com
sshardonofsky@seyfarth.com
dcharris@seyfarth.com
ekazaryan@seyfarth.com

*Counsel for Defendants TransDigm Group Incorporated and AvtechTyee, Inc.*

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 44

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910

1

## CERTIFICATE OF SERVICE

2

I hereby declare that on this 27th day of April, 2023, I caused a copy of the Amended

3

Answer and Defenses to Complaint to be electronically filed with the Court using its e-filing

4

system which will send notification of such filing to the following:

5

6

Beth Bloom

7

Jay Corker Free
BLOOM LAW PLLC

8

3827-C South Edmunds Street
Seattle, WA 98118

9

bbloom@bloomlawpllc.com
jfree@bloomlawpllc.com

10

11

*Counsel for Plaintiff*

12

Jeff Dingwall
Eight & Sand

13

750 West Fir Street, Suite  602
San Diego, CA 92101

14

jeff@eightandsandlaw.com

15

*Counsel for Plaintiff*

16

17

DATED this 27th day of April, 2023.

18

19

                                        *s/Kyna Gonzalez*
                                        Kyna Gonzalez, Legal Assistant

20

                                        kgonzalez@seyfarth.com

21

22

23

24

25

26

AMENDED ANSWER TO COMPLAINT
[NO. 2:23-CV-00186] - 45

94502345v.1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, Washington  98104-4041
(206) 946-4910