# APPENDIX OF CASES

**APPENDIX OF CASES**
**cited in Defendants' Response in Opposition to Plaintiff's Motion to Quash**

- *Abu v. Piramco Sea-Tac Inc.*, No. C08-1167RSL, 2009 WL 279036, at *3 (W.D. Wash. Feb. 5, 2009)

- *Awosika v. Target Corp.*, No. 11-0185-RSM, 2011 WL 13048452, at *1 (W.D. Wash. May 26, 2011)

- *Hite v. Peters*, No. CIV.07-4492-RMB-AMD, 2009 WL 1748860, at *3 (D.N.J. June 19, 2009)

- *McDaniels v. Preito*, No. 3:17-cv-05801-RBL-DWC, at *2 (W.D. Wash. Sep. 19, 2018)

- *Maxwell v. Health Ctr. of Lake City*, 2006 WL 1627020 (M.D.Fla.2006)

- *Mirkin v. Winston Resources*, LLC, 2008 WL 4861840 (S.D.N.Y.2008)

- *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)

- *Rugo v. Hardwick*, No. 2:16-CV-00444-SMJ, 2017 WL 2623771, at *3 (E.D. Wash. June 16, 2017)

KeyCite Yellow Flag - Negative Treatment

Distinguished by   Lyzer v. Caruso Produce, Inc.,   D.Or.,   October 4, 2018

2009 WL 279036

Only the Westlaw citation is currently available.

United States District Court, W.D. Washington,

at Seattle.

Faiza ABU, Plaintiff,

v.

PIRAMCO SEA–TAC INC., d/b/a Best

Western Airport Execute, Defendant.

No. C08–1167RSL.

|

Feb. 5, 2009.

**Attorneys and Law Firms**

Beth A Barrett Bloom, Sean M Phelan, Frank Freed Subit & Thomas, Seattle, WA, for Plaintiff.

Suzanne J. Thomas, K&L Gates LLP, Seattle, WA, for Defendant.

ORDER GRANTING IN PART AND DENYING

IN PART MOTION FOR A PROTECTIVE ORDER

ROBERT S. LASNIK, District Judge.

**\*1** This matter comes before the Court on plaintiff's motion for a protective order. Plaintiff seeks an order preventing defendant from contacting her current and former employers, prohibiting defendant from issuing subpoenas to them, and quashing the subpoenas already issued.

**A. Background Facts.**

Plaintiff worked for defendant as a hotel front desk agent from July 27, 2006 until November 3, 2006. Plaintiff was required to wear a uniform at work.

A tenet of plaintiff's Muslim faith is to wear a head scarf when she is in the presence of males who are not her husband or blood relatives. Plaintiff wore a head scarf to work during Ramadan in 2006 and the weeks prior to it. Plaintiff contends that defendant discharged her when she refused to remove her head scarf. Plaintiff contends that defendant failed to

accommodate her religious preference in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

In January 2009, defendant issued subpoenas duces tecum to two employers for whom plaintiff worked prior to defendant.[1] Defendant expressed an intent to issue three more subpoenas to plaintiff's subsequent employers, including her current employer. The subpoenas to the former employers are identical and request ten categories of documents regarding plaintiff: (1) each personnel file, (2) each departmental file, (3) each formal or informal supervisor's file, (4) all records relating to any reference check completed, (5) all payroll records, (6) all records identifying employee benefits, (7) each record relating to the reason for termination, (8) all records relating to complaints about plaintiff's work performance and investigation into such complaints, (9) records reflecting complaints of discrimination made by plaintiff to any agency, and (10) a job description.

**B. Analysis.**

Plaintiff has filed a certification establishing that counsel met and conferred prior to filing this motion.[2] Although plaintiff initially contended that defendant failed to give proper notice of the subpoenas, she did not pursue that issue in her reply memorandum. Moreover, plaintiff has had a sufficient opportunity, albeit after two of the subpoenas were served, to object. Therefore, the motion is ready for the Court's review.

As a threshold matter, a plaintiff has standing to seek to quash a subpoena issued to a third party where the plaintiff asserts a legitimate privacy interest in the material sought. *See, e.g.,* Maxwell v. Health Ctr. of Lake City, 2006 WL 1627020 (M.D.Fla.2006). In this case, plaintiff has shown that she has a legitimate privacy interest in the contents of her employment-related files. Therefore, she has standing to bring this motion.

As for the merits of plaintiff's motion, the Court has discretion to issue a protective order forbidding or limiting discovery. Fed.R.Civ.P. 26(c)(1). A party is entitled to discovery into matters "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). A party's right to obtain material pursuant to a Rule 45 subpoena to a third party is as broad as otherwise permitted under the discovery rules. *See, e.g.,* Wright, Miller & Cooper, Federal Practice & Procedure § 2459 at pp. 44–45 (2d. ed.1994). A court may limit discovery to protect a party from annoyance,

embarrassment, oppression, or undue burden. Fed.R.Civ.P. 26(c)(1). Plaintiff, as the party resisting discovery, bears the burden of showing why discovery should be denied. *See, e.g.,* Blankenship v. Hearst Corp., 519 F.2d 418, 419 (9th Cir.1975).

**\*2** Plaintiff contends that the information defendant seeks is information it already has (information about her compensation) or information that is inadmissible in this case (information regarding plaintiff's performance history). The requests are not overly broad on their face because they request specific categories of documents. However, defendant has not explained why information regarding plaintiff's employee benefits is relevant. Although plaintiff seeks back pay, she does not seek lost benefits. Therefore, the other employers will not be required to provide information about plaintiff's benefits. Similarly, the other employers will not be required to provide plaintiff's payroll records because compensation information can be obtained through less intrusive means, like tax records.[3] Nor is this information relevant to mitigation or to support defendant's after acquired evidence defense. Any after acquired evidence that might be obtained would not affect plaintiff's damages because she has already obtained other employment and mitigated her damages.

Defendant has shown that the other information sought from plaintiff's employers is relevant in two ways. First, it is relevant to her claims of emotional distress. Plaintiff contends that as a result of defendant's discriminatory treatment, she suffered emotional distress, including a reduced ability to concentrate. Consequently, plaintiff's subsequent attendance and ability to concentrate (as reflected in her job performance) is relevant. Furthermore, the information is also relevant to support or disprove causation of the emotional distress. Second, information from plaintiff's other employers is relevant to her credibility. It does not appear that defendant is conducting a fishing expedition on the issue. Rather, plaintiff has been untruthful once about an important issue. She failed to list a recent prior employer on her employment application with defendant because she feared receiving a bad reference. The omission was made even though plaintiff signed the application certifying that the answers provided were accurate to the best of her knowledge and belief and acknowledging that intentional omissions could lead to her termination. Because plaintiff was intentionally untruthful at least once regarding an important issue, defendant is entitled to further probe her credibility.[4] Moreover, the nature of

plaintiff's claims and the issue of the sincerity of her beliefs place her credibility directly at issue in this case. Furthermore, defendant is entitled to discover whether plaintiff has previously filed frivolous discrimination claims, which could weigh against her credibility. *See, e.g.,* Maxwell, 2006 WL 1627020 at \*4 (citing Graham v. Casey's General Stores, 206 F.R.D. 251, 256 (S.D.Ind.2002)).[5] Therefore, with the exception of documents regarding payroll and benefits, the information sought is relevant. Plaintiff has not shown how the evidence can be obtained through less intrusive means.

**\*3** Having found that some of the requested evidence is relevant, the Court balances defendant's interest in obtaining the information against plaintiff's privacy interest and the burden to the third parties. Plaintiff claims that she does not want her current employer to learn that she has filed an employment discrimination lawsuit against her prior employer. However, plaintiff is statutorily protected from retaliation for filing the lawsuit. As for her claimed privacy interest, plaintiff gave a press interview about this matter which resulted in a story about it in the Seattle Weekly in September 2008. Coverage of the issue is readily available through a simple internet search using plaintiff's name. Moreover, plaintiff may have waived some of her privacy interests by bringing this Title VII suit and seeking damages for emotional distress. *See, e.g.,* Maxwell, 2006 WL 1627020 at \*2; Mirkin v. Winston Resources, LLC, 2008 WL 4861840 (S.D.N.Y.2008). Plaintiff could have reasonably expected that matters regarding her other employment and performance would be disclosed in this litigation. She has not shown that any information in her employment records is particularly embarrassing or revealing. There is no evidence that defendant intends to use the discovery process or the contents of the files to harass plaintiff or her other employers. In addition, plaintiff has worked for each employer for a relatively short period of time, so producing the documents should not be unduly burdensome.

Accordingly, plaintiff's motion for a protective order (Dkt.# 23) is GRANTED IN PART AND DENIED IN PART. The Court quashes the already issued subpoenas to the extent that they seek plaintiff's payroll records and information regarding employee benefits. Nor may defendant seek that information from plaintiff's subsequent employers. Otherwise, plaintiff's motion is denied.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 279036

## Footnotes

1    In December 2008, defendant sent subpoenas duces tecum to the University of Washington and Highline Community College seeking copies of plaintiff's education-related files, including her financial aid records. Plaintiff has not moved to quash those subpoenas and instead focuses on the employment-related subpoenas.

2    On January 15, 2009, plaintiff's counsel sent a letter to this Court setting forth the issue and requesting "direction." Even though a copy of the letter was sent to opposing counsel, the communication was inappropriate. Any request for relief should be contained in a motion, which allows the opposing party an opportunity to respond.

3    Defendant argues that plaintiff has indicated in her supplemental initial disclosures that she will rely on documents from other employers. Defendant did not attach the supplemental initial disclosures or otherwise indicate the extent of plaintiff's anticipated reliance. If plaintiff indicates an intent to rely on payroll and benefits-related documents from her other employers, defendant may seek to obtain those documents.

4    Compare *Graham,* 206 F.R.D. at 255 (explaining that plaintiff's untruthful statements to her prior employer could be relevant to her credibility) with *Chamberlain v. Farmington Sav. Bank,* 2007 WL 2786421 (D.Conn.2007) (granting motion to quash where defendant had not shown that plaintiff had misrepresented information in the litigation); *see also Woods v. Fresenius Med. Care Group,* 2008 WL 151836 (S.D.Ind.2008) (declining to find relevance based on credibility where defendant did not identify facts to show that plaintiff had been untruthful to it or to her other employers).

5    *See also Shirazi v. Childtime Learning Ctr.,* 2008 WL 4792694 (W.D.Okla.2008).

        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Awosika v. Target Corporation, Not Reported in Fed. Supp. (2011)

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 6 of 39

KeyCite Yellow Flag - Negative Treatment
Distinguished by Rugo v. Hardwick, E.D.Wash., June 16, 2017

2011 WL 13048452
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

Kemi AWOSIKA, Plaintiff,
v.
TARGET CORPORATION, Defendant.

CASE NO. 11-0185-RSM
|
Signed 05/26/2011

**Attorneys and Law Firms**

Susan B. Mindenbergs, Seattle, WA, for Plaintiff.

Farron Danelle Lennon, Schwabe Williamson & Wyatt, Seattle, WA, Roman D. Hernandez, Schwabe Williamson & Wyatt, Portland, OR, for Defendant.

ORDER DENYING PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER

RICARDO S. MARTINEZ, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

**\*1** This matter comes before the Court on Plaintiff's motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c). For the reasons set forth below, the motion is DENIED.

## II. BACKGROUND

Plaintiff Kemi Awosika worked as a pharmacist for Defendant Target between 2006 and 2008. (Dkt. 1–1 at 5, 8.) Ms. Awosika claims that Target fired her in retaliation for her efforts to enforce quality and safety standards in the pharmacy. (Dkt. 1–1 at 8.) Target maintains that Ms. Awosika was terminated because she encouraged an employee to engage in off-the-clock work, in violation of the company's policy. (Dkt. 12 at 7.) Target has served subpoenas on Ms. Awosika's employers since 1994: three employers from before her time at Target and three subsequent employers. (Dkt. 10 at 1; Dkt. 12 at 1.) Each subpoena to these employers requests production of "all payroll and employment documents" concerning Ms. Awosika's employment. (Dkt. 11 at 7–17.) Ms. Awosika has moved for a protective order barring Target from seeking this information. (Dkt.10.)

## III. DISCUSSION

**A. Ms. Awosika has not met her burden of persuasion under Rule 26(c).**

Rule 26(c) allows a court to, "for good cause," grant an order to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.Pro. 26(c)(1). Ms. Awosika has requested that this court grant a protective order barring Target from pursuing her employment records because she has a privacy interest in the information found in the records. (Dkt. 10 at 4.)

Ms. Awosika appears to misunderstand the burden of persuasion on parties seeking a protective order. She asserts that Target, as the party seeking discovery of records that contain private information, has the burden to demonstrate how the records are relevant. (Dkt. 10 at 4.) However, the burden is instead on Ms. Awosika to demonstrate good cause to grant the protection order. Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 121011 (9th Cir.2002) ("For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted"). [1] This court must therefore determine whether Ms. Awosika has shown that her privacy interest amounts to good cause.

The Supreme Court has held that Rule 26(c) serves to limit pretrial discovery because discovery, in part, "may seriously implicate privacy interests of litigants and third parties." Seattle Times Co. v. Rinehart, 467 U.S. 20, 34–35 (1984). It is possible, therefore, that an interest in privacy can amount to good cause for purposes of Rule 26(c). However, a general assertion of harm is not enough to demonstrate good cause. Cipollone v. Liggett Group, Inc.,785 F.2d 1108, 1121 (3rd Cir.1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); accord, Beckman Industries, Inc. v.

Awosika v. Target Corporation, Not Reported in Fed. Supp. (2011)

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 7 of 39

*International Ins. Co.,* 966 F.2d 470, 476 (9th Cir.1992). The Supreme Court has also affirmed that in order to "establish 'good cause' for a protective order ... courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n.16 (1981), *quoting In re Halkin,* 194 U.S.App.D.C. 257, 274, 598 F.2d 176, 193 (1979). The requirement, then, is that a party seeking protection of her own employment records must assert how, specifically, she will be harmed by the discovery of those records. Ms. Awosika has made no specific allegation of harm that would result from the discovery of her employment records, other than to rely on the proposition that there is a "strong public policy" against disclosing such records. (Dkt. 15 at 1.) Ms. Awosika seems to argue that a privacy interest can *per se* establish good cause, but the authorities she cites may be distinguished in that they involve the employment records of third parties. *See, e.g., Miller v. Federal Express Corp.,* 186 F.R.D. 376, 384 (W.D.Tenn.1999); Dkt. 10 at 4. [2] Because Ms. Awosika makes only a broad allegation that the documents Target seeks will affect her privacy interest, she has failed to meet her burden.

### B. This court may nonetheless limit discovery under Rule 26(b).

**\*2** While Ms. Awosika has failed to demonstrate good cause as required by Rule 26(c), she has also raised issues that implicate Rule 26(b). That rule allows parties to seek discovery of any relevant information "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.Pro 26(b)(1). The rule also requires a court to limit discovery if it finds that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit," Fed.R.Civ.Pro 26(b)(2). Thus despite the relatively broad scope of discovery, courts "remain reluctant to allow any party to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Onwuka v. Federal Express Corp.* 178 F.R.D. 508, 516 (D.Minn.1997) (internal quotations omitted).

Ms. Awosika has alleged that the records sought by Target are irrelevant to her claim and duplicative in that she may provide Target with the necessary information. Dkt. 10 at 5. She also states that the information sought will be inadmissible at trial if used as character evidence. Dkt 10 at 7. Her concerns here are valid, especially given that the subpoenas to her former employers ask for all information relevant to Ms. Awosika. Courts have often found that such unlimited requests are unreasonably cumulative or burdensome. *See, e.g., Lewin v. Nackard Bottling Co.,* 2010 WL 4607402 at *1 (D.Ariz. Nov. 4, 2010) ("By failing to limit its subpoena to certain categories of documents, we find that defendant is merely trying to engage in a fishing expedition"); *see also Abu v. Piramco Sea–Tac Inc.,* 2009 WL 279036, at *2 (W.D. Wash. Feb. 5, 2009) (finding that limited requests for employment records were relevant for certain issues and not overly broad). Because Target's requests are not limited in any way, the information sought must be relevant, not duplicative, and likely to lead to admissible evidence.

### C. The information sought is relevant to Target's case, likely to lead to admissible evidence, and not unreasonably duplicative.

Target has listed four reasons why the requested documents are relevant to its case and why they are not duplicative: first, that they are relevant to assessing damages and mitigation; second, that they relate to Ms. Awosika's emotional distress claim; third, that they will be helpful in assessing Ms. Awosika's credibility; and fourth, that they will assist Target in formulating a defense based on after-acquired evidence.

#### 1. Damages and Mitigation

Ms. Awosika states that Target may obtain information pertinent to damages and mitigation through her tax returns. (Dkt. 10 at 7.) Target maintains that the W–2s, which Ms. Awosika has provided, do not adequately address the issues of lost benefits, tax consequences, or lost earning capacity. (Dkt. 12 at 5.) The employment records would likely not make the tax consequences of Ms. Awosika's termination any clearer than would her W–2s. The W–2s may not, however, paint a full picture concerning benefits and lost earning capacity; in this regard, the employment records would be better suited to provide that full picture than would any information provided by Ms. Awosika.

The employment records are also relevant to mitigation because they "reflect upon Plaintiff's ability to obtain employment ... and/or why Plaintiff may have been terminated from a job obtained after [her] employment with Defendant." *Brady v. Lauderhill Auto Investors I,* LLC, 2010

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 8 of 39

Awosika v. Target Corporation, Not Reported in Fed. Supp. (2011)

WL 4135329 at *2 (S.D.Fla. Oct. 19, 2010); accord, 🚩 Hite v
Peters, 2009 WL 1748860 at *4 (D. N.J. June 19, 2009) (citing
cases); *accord,* 🚩 *Shirazi v. Childtime Learning* Center, Inc.,
2008 WL 4792694 at *2 (W.D.Okla. Oct. 31, 2008); but see,
e.g. 🚩 Sanders v. Dalcraft, LLC, 2009 WL 1392602 at *3
(N.D.Tex. May 18, 2009). The records from Ms. Awosika's
former employers will have information concerning Ms.
Awosika's performance and her ability to obtain comparable
work. While Ms. Awosika may be able to provide some of this
information in interrogatories, the information contained in
the employment records will provide a balanced perspective
on Ms. Awosika's ability and are less likely to be biased.

#### 2. *Emotional Distress*

**\*3** Ms. Awosika seeks damages for emotional distress.
(Dkt. 1–1 at 10.) In order to prove that Target caused her
emotional distress, she will need to provide evidence of her
emotional state before and after her termination from Target.
Target likewise has the right to gather evidence to rebut
the emotional distress claim. Ms. Awosika's employment
records may lead to this evidence, especially in documents
pertaining to claims for benefits and evaluations of work
performance. *See Jackson v. Parker,* 2008 WL 4844747 at
*2 (N.D.Ill.Nov.7, 2008) (holding that because plaintiff had
claimed emotional distress, plaintiff's "emotional behavior
prior to the incident that is the subject of the present case
could scarcely be more pertinent, and his personnel files
at his prior employers are reasonably likely to lead to the
discovery of admissible evidence"); *accord,* 🚩 *Shirazi,* 2008
WL 4792694 at *2. Ms. Awosika herself may certainly
provide in deposition information on her emotional state, but
the personnel files from her employers will provide unbiased
information recorded for purposes other than litigation.

#### 3. *Credibility*

Target states that the employment records are necessary to
assess Ms. Awosika's credibility, particularly in regard to
whether she was truthful on her application for employment
with Target and "whether she has previously filed frivolous
lawsuits." (Dkt. 12 at 7.) It is possible that in this regard,
the employment records would be used to uncover character
evidence, as Ms. Awosika asserts. (Dkt. 10 at 7.) Some courts
have held that such information would be inadmissible under
Federal Rule of Evidence 404(a). *See, e.g.,* 🚩 *Chamberlain
v. Farmington Sav. Bank,* 2007 WL 2786421 at *3 (D.Conn.
Sept. 25, 2007) ("The defendant seeks to discover evidence

of the plaintiff's performance history in order to show that
he has a propensity for certain performance deficiencies.
Such evidence is inadmissible"). However, even if evidence
is inadmissible under Rule 404(a), it may still be used to
impeach a witness on cross-examination under Rule 608(b).
Furthermore, the admissibility of any evidence discovered
in regards to Ms. Awosika's character may be dealt with in
motions in limine. The purpose of discovery is to gain access
to information that will lead to admissible evidence, not to
gain access only to admissible evidence. Given the broad
scope of discovery, Target may legitimately use the subpoenas
to search for information regarding Ms. Awosika's credibility.

Of greater concern is the fact that Target does not state
specifically why such a broad subpoena is necessary for
only the two credibility issues mentioned. If credibility was
the only stated justification for these subpoenas, they would
be overbroad under Rule 26(b). In that case, the subpoenas
would have to be limited to request only information
relating to the credibility issues surrounding Ms. Awosika's
employment application and previous lawsuits.

#### 4. *After-acquired evidence*

Target also seeks plaintiff's employment records in order
to pursue an after-acquired evidence defense. The defense
would limit damages if the evidence reveals some kind
of wrongdoing on Ms. Awosika's part during her time at
Target such that Target would have terminated Ms. Awosika
had Target known about it. *See, e.g.,* 🚩 *Shirazi,* 2008 WL
4792694 at *2. However, the Supreme Court has cautioned
against abuse of this defense and placed reliance on the courts,
using the Federal Rules of Civil Procedure, to deter such
abuses. 🚩 *McKennon v. Nashville Banner Pub. Co.,* 513 U.S.
352, 363 (1995). Lower courts have interpreted this to mean
that discovery cannot be pursued in search of after-acquired
evidence if there is no basis for believing that such evidence
will be discovered. *See, e.g.,* 🚩 *Sanders,* 2009 WL 1392602
at *2.

Here, Target argues that Ms. Awosika's employment
application to work for Target contains a basis for pursuing
after-acquired evidence. Specifically, Target states that Ms.
Awosika gave "time to move on" as a reason for leaving a
previous employer (Rite Aid). (Dkt. 12 at 8.) Target sees this
as a basis for believing it might find after-acquired evidence
because it would have terminated Ms. Awosika had she not
been truthful in this regard. *Id.* "Time to move on" could

Awosika v. Target Corporation, Not Reported in Fed. Supp. (2011)

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 9 of 39

have a number of honest meanings. However, the phrase is ambiguous enough to provide a reasonable basis for discovery of information regarding Ms. Awosika's departure from Rite Aid in pursuit of after-acquired evidence.

### IV. CONCLUSION

**\*4** While Ms. Awosika may have a privacy interest in the employment records sought by Target, she has not articulated exactly why she will be harmed if they are released. Nor is the public policy in favor of recognizing the privacy interest in such files the only consideration this court must take into account:

> It cannot be denied that personal privacy and accurate employee evaluations are important public policy concerns. However, there are also countervailing interests that must be considered. The scope of discovery must be broad in order to provide both sides with all the information necessary for proper and full litigation of all the relevant issues, as well as to eliminate surprise and to facilitate settlement.

*Blount v. Wake Elec. Membership Corp.* 162 F.R.D. 102, 105 (E.D.N.C.1993) (citing *Hickman v. Taylor*, 329 U.S. 495, 507–508 (1947)). Moreover, Ms. Awosika's concern for her privacy may be addressed through the confidentiality

provisions to which the parties have already agreed. (Dkt. 12 at 2.)

Though Target's requests to Ms. Awosika's employers are indeed broad, they seek relevant information likely to lead to admissible evidence. Even if they may be overly broad in some respects, it would be fruitless to try to limit them to relevant information in any meaningful way. While the request for information concerning credibility and the after-acquired evidence defense is of limited relevance, the information pertinent to damages, mitigation, and emotional distress will be found in a number of documents in the employment files. Target's requests are therefore not so broad as to require limitation.

Furthermore, Ms. Awosika has not stated a specific reason to limit the scope of the subpoenas. Without any demonstrated burden to Ms. Awosika, there are no countervailing considerations to outweigh the relevance of the information sought in Target's subpoenas.

Accordingly, having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiff's Motion for Protective order (Dkt.10) is DENIED.

(2) The Clerk is directed to forward a copy of this Order to plaintiffs and to all counsel of record.

Dated this 26 th day May 2011.

### All Citations

Not Reported in Fed. Supp., 2011 WL 13048452

### Footnotes

1    *But see, e.g.,* *Sanders v. Dalcraft*, LLC, 2009 WL 1392602 (N.D.Tex., May 18, 2009) ("Once defendant establishes that the documents requested are within the scope of permissible discovery, the burden shifts to plaintiff to show why discovery should not be permitted").

2    See also *Williams v. Roy O. Martin Lumber Co. LLC,* 51 Fed. Appx. 483 (5th Cir.2002), *Knoll v. American Tel. & Tel. Co.,* 176 F.3d 359 (6th Cir.1999) and *Duling v. Gristede's Operating Corp.,* 266 F.R.D. 66, 73

**Awosika v. Target Corporation, Not Reported in Fed. Supp. (2011)**

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 10 of 39

(S.D.N.Y.2010)(citing cases) for cases in which the privacy interest of third parties appears to be sufficient to show good cause. The other cases Ms. Awosika cites for authority regarding the privacy interest issue do not adequately address the burden on the party seeking the protective order. *See, e.g.,* 🚩 *Woods v. Fresenius Med. Care Group of N.A.,* 2008 WL 151836 (S.D.Ind., Jan. 16, 2008); Dkt. 10 at 5.

---

**End of Document**                                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by Hashem v. Hunterdon County, D.N.J., May 18, 2017

2009 WL 1748860
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Norris O. HITE, Jr., Plaintiff,

v.

Mary E. PETERS, Secretary, U.S.
Department of Transportation, Defendant.

Civil No. 07–4492–RMB–AMD.
|
June 19, 2009.

West KeySummary

1   Federal Civil Procedure ⚖ Employment,
Records Of

Federal Civil Procedure ⚖ Protective Orders

The employee was not entitled to a protective
order precluding the employer from obtaining
the employee's employment records from his
subsequent employer. The employee filed suit
alleging that he was terminated by the employer
on the basis of his race and sex. The employer
sought the records to demonstrate the extent to
which the employee mitigated his damages since
the termination of his employment. Fed. R. Civ.
P. 26(c).

**Attorneys and Law Firms**

Dennis L. Friedman, Philadelphia, PA, for Plaintiff.

Irene E. Dowdy, Office of the US Attorney, Camden, NJ, for
Defendant.

*MEMORANDUM OPINION AND ORDER*

ANN MARIE DONIO, United States Magistrate Judge.

*1  This matter comes before the Court by way of motion
[Doc. No. 15] of Plaintiff, Norris O. Hite, Jr., for a protective
order precluding Defendant, Mary E. Peters, from obtaining
by way of subpoena the employment records of Plaintiff
from PleasanTech Academy Charter School (hereinafter,
"PleasanTech"), and by way of cross-motion [Doc. No. 17]
of Defendant for an order to compel discovery. The Court has
considered the submissions of the parties, and has decided this
matter pursuant to FED. R. CIV. P. 78. For the reasons that
follow, Plaintiff's motion for a protective order is denied, and
Defendant's cross-motion to compel is granted.

Plaintiff initiated this action by filing a complaint on
September 19, 2007 seeking judicial review and a trial *de
novo* pursuant to 42 U.S.C. § 2000e–16(c) on the issues
raised in his complaint of discrimination filed with the
United States Equal Employment Opportunity Commission.
(Compl.¶¶ 3, 19.) Plaintiff alleges in the complaint that
his employment with the Federal Aviation Administration
(hereinafter, "FAA") was terminated "on the basis of race
(African–American), color (black) and sex (male)." (*Id.* at
¶¶ 5, 10, 13.) Plaintiff seeks in this action, *inter alia,* a
determination that the termination of his employment was
discriminatory and, therefore, in violation of Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e,
*et seq.,* retroactive reinstatement with back pay, benefits, and
compensatory damages under the Civil Rights Act of 1991.
(Compl., "Prayer for Relief".)

In the motion presently before the Court, Plaintiff requests
an Order precluding Defendant from issuing a subpoena for
Plaintiff's employment records from PleasanTech, Plaintiff's
place of employment subsequent to his termination with the
FAA. (Pl.'s Mem. in Supp. of Mot. for Protective Order
(hereinafter, "Pl.Br.") 1.) Plaintiff contends that a request
for his employment records is "highly intrusive" and relates
to matters "which are not relevant to the issues of the
lawsuit." (*Id.*) Plaintiff asserts that in the event the Court
awards back pay in this case, a back pay award can be
computed in accordance with the Back Pay Act, 5 U.S.C.
§ 5596, and the formulas set forth in its implementing
regulations. (*Id.* at 2.) Plaintiff represents that he already
provided to Defendant "information necessary for back
pay computation purposes," including W–2s, 1099s and
a declaration regarding the income he has received since
his termination with the FAA, and thus contends that the
employment information to be subpoenaed by Defendant is
not relevant to the issues in this case. (*Id.* at 2–3.)

In response, Defendant seeks the employment records to demonstrate the extent to which Plaintiff mitigated his damages since the termination of his employment with the FAA in November 2003, which information is purportedly necessary in the calculation of any back pay that may be awarded to Plaintiff. Defendant propounded discovery as to Plaintiff's mitigation of damages, including his sources of income since November 2003, his availability for work since that time, and Plaintiff's receipt of disability insurance payments. (Def.'s Mem. in Opp. to Pl.'s Mot. for Protective Order and in Supp. of Def.'s Cross–Mot. to Compel Discovery (hereinafter, "Def.Br.") 2.) According to Defendant, Plaintiff stated in discovery that subsequent to his termination with the FAA, he was employed by PleasanTech as a substitute teacher and a full-time teacher, but Plaintiff has not provided the specific dates of employment in either a part-time or full-time position, and a computation of post-employment income is purportedly not possible based upon the information provided by Plaintiff. (Decl. of Irene E. Dowdy, Assistant United States Attorney (hereinafter, "Dowdy Decl.") ¶¶ 3, 12; Def. Br. 3.) While Plaintiff has provided W–2s, 1099s, and a declaration, Defendant asserts that the employment records from PleasanTech are necessary to verify, corroborate, refute, and/or add to the evidence provided by Plaintiff. (Def.Br.10–11.) Defendant further argues that the documents produced by Plaintiff do not set forth the amount of money that Plaintiff could have earned since his employment with the FAA was terminated in 2003. (*Id.* at 11.) In addition, Defendant asserts that Plaintiff responded in discovery that he received "unemployment compensation" and "Disability Insurance payments" as additional sources of income since November 2003, but allegedly has not provided any further information about his receipt of disability insurance payments or periods of disability. (Dowdy Decl. ¶¶ 3, 16; Def. Br. at 5–6.) Defendant also contends that Plaintiff's employment records may disclose the reason why Plaintiff's employment with PleasanTech ended in 2007 and therefore are relevant to the issue of mitigation. (*See* Def. Br. 11.) Defendant seeks an order denying Plaintiff's motion for a protective order and compelling Plaintiff to respond to supplemental discovery concerning his receipt of disability insurance payments.

**\*2** Federal Rule of Civil Procedure 26(c) provides the Court with authority to enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c)(1). Upon a showing of good cause, the Court may "forbid[ ] the disclosure or discovery," or may "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters[.]" *Id.* The party seeking a protective order bears the burden of demonstrating that good cause exists to limit or foreclose discovery. *See id.* A party seeking a protective order is required to demonstrate a "particular need for protection." *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986).

Plaintiff's objections to production of his employment records are based on two different grounds. First, Plaintiff opposes any discovery on mitigation issues, asserting that back pay "can be computed in accordance with the formulas applied by the courts and administrative agencies under the Back Pay Act at 5 U.S.C. § 5596[,]" and that "[b]ack pay damages are calculated by subject matter experts, *i.e.,* personnelists employed by federal administrative agencies, and involve a comparison of income and monetary value of benefits had plaintiff remained employed at FAA versus his post-termination salary and benefits." (Pl.Br.2.) Second, Plaintiff asserts that the discovery is not relevant, or alternatively, that the information provided is sufficient. (*Id.* at 1, 3.) For the reasons that follow, the Court rejects both arguments.

With respect to the argument based upon the Back Pay statute, the Court notes that Plaintiff brings this case pursuant to 42 U.S.C. § 2000e–16, by which a federal government employee may file a civil action as provided in 42 U.S.C. § 2000e–5. 42 U.S.C. § 2000e–16(d) specifically makes 42 U.S.C. § 2000e–5(g), governing remedies available for unlawful employment practices, applicable to actions brought by a federal employee pursuant to 42 U.S.C. § 2000e–16. Under 42 U.S.C. § 2000e–5(g), "[i]f the court finds that the respondent has intentionally engaged in ... an unlawful employment practice charged in the complaint, the court may ... order such affirmative action as may be appropriate, which may include ... reinstatement or hiring of employees, with or without back pay[.] ..." 42 U.S.C. § 2000e–5(g). However, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." *Id.* Thus, Title VII claimants have a statutory duty to mitigate damages. The employer, however, bears the burden of proving a failure to mitigate. *Booker v. Taylor Milk Co., Inc.,* 64 F.3d 860, 864 (3d Cir.1995) (citing *Robinson v. SEPTA, Red Arrow,* 982 F.2d 892, 897

(3d Cir.1993)). Upon a finding of an employee's failure to mitigate, a back pay award must be reduced by the amount the employee could have earned with reasonable diligence. *Id.* at 866.

**\*3** In light of Plaintiff's duty to mitigate damages under Title VII, the Court rejects Plaintiff's assertion that the information sought by Defendant in discovery for determining mitigation is unnecessary to the calculation of back pay under the Back Pay Act.[1] (*See* Pl. Br. 2–3.) While Plaintiff contends that a back pay award will be calculated by comparing "income and monetary value of benefits had plaintiff remained employed at the FAA versus his post-termination salary and benefits" (*id.* at 2), Title VII expressly requires that a back pay award be reduced by "amounts earnable with reasonable diligence by the person or persons discriminated against[.] ..." 42 U.S.C. § 2000e–5(g). Thus, mitigation of damages impacts the calculation of back pay under the Back Pay Act for a Title VII violation. *See Brown v. Secretary of the Army,* 918 F.2d 214, 217–18 (C.A.D.C.1990) ("[T]he Back Pay Act is an auxiliary measure that leaves the structural framework of Title VII intact and fully applicable.... The specific limitation of Title VII must prevail over the more generous term of the Back Pay Act.... Title VII and the Back Pay Act, are most sensibly read as complementary."). Moreover, the Court rejects Plaintiff's assertion that evidence concerning mitigation in this action will not be presented to the trier of fact and is therefore not discoverable. (*See* Pl. Br. 2.) A determination of whether Plaintiff met his duty to mitigate damages is made by the trier of fact. *See Booker,* 64 F.3d at 864. Accordingly, even if the trier of fact does not ultimately calculate the final amount of a back pay award because such determination may be made by "personnelists employed by federal administrative agencies," as Plaintiff asserts, evidence must be presented to the trier of fact on the issue of mitigation. *Cf. White v. Bloomberg,* 501 F.2d 1379, 1384 (4th Cir.1974) (in affirming district court's refusal to reopen judgment to consider mitigation issue that was not raised prior to entry of summary judgment on liability, Fourth Circuit noted that regulations under Back Pay Act have not adopted a procedure for "exclusive administrative computation of back pay following a judicial order for reinstatement" and thus rejected defendant's argument that it was not required to raise mitigation before the district court).

The Court also rejects Plaintiff's argument that the post-termination employment records sought by Defendant are not relevant to the issues in this case. (Pl.Br.1.) As a general matter, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense [.] ..." FED. R. CIV. P. 26(b)(1). The Court may also permit for "good cause" discovery of matters that are "relevant to the subject matter involved in the action." *Id.* "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.; see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 135 F.R.D. 101, 104 (D.N.J.1990) ("[I]t is important to distinguish the right to obtain information by discovery from the right to use it at trial."). Thus, relevancy is more liberally and broadly construed at the discovery stage than at trial. *See Nestle,* 135 F.R.D. at 104. The party resisting discovery "has the burden of clarifying, explaining and supporting its objections." *Id.* (citing *Tele–Radio Sys. Ltd. v. De Forest Elec.,* 92 F.R.D. 371, 375 (D.N.J.1981)). Once the party resisting discovery meets this requirement, however, the burden is placed on the proponent of the discovery request to show that the information sought is relevant. *See id.* (citing *McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53, 57 (E.D.Pa.1979); *United States v. Int'l Bus. Mach. Corp.,* 66 F.R.D. 215, 218 (S.D.N.Y.1974)).

**\*4** The Court finds that Plaintiff's post-termination employment records are relevant under Rule 26 standards to the issue of mitigation of damages, and, specifically, the amount that Plaintiff could have earned with reasonable diligence.[2] Defendant contends, and the Court agrees, that documents setting forth the specific dates on which Plaintiff was employed by PleasanTech in a full-time position, those dates on which he was employed in a part-time position, and the rates of pay for each period of employment, bear on the amount Plaintiff could have earned with reasonable diligence. (Def.Br.2, 11.) The employment records are likely to contain such information, and a request for these documents thus is reasonably calculated to lead to the discovery of admissible evidence on the issue of mitigation.[3] *See Noble v. Ruby Tuesdays Restaurants, Inc.,* No. Civ. A. 2:06–259, 2007 WL 3125131, at \*2 (S.D.Ohio Oct.23, 2007) (in Title VII employment action, "[e]mployment records are relevant to the issues of mitigation and damages[.]"); *E.E.O.C. v. Woodmen of World Life Ins. Soc.,* No. Civ. A. 8:03–165, 2007 WL 649298, at \*5 (D.Neb. Feb.1, 2007) (in Title VII employment action, court found that "although the plaintiffs have provided certain financial information, the

employment records sought [from plaintiff's employers for whom plaintiff worked subsequent to her employment with defendant] ... may contain information relevant to [plaintiff's] mitigation of damages. Additionally, [plaintiff's] general job performance records reasonably bear on the defendant's stated reason for [plaintiff's] demotion[.]"); *Walker v. Northwest Airlines Corp.,* No. Civ. 00–2604, 2002 WL 32539635, at *2 (D.Minn. Oct.28, 2002) ("[B]oth past and post-termination wage and employment records are highly relevant to the issue of mitigation and to the computation of damages in this case .... [O]ther types of employment information such as disciplinary records, resumes, and applications ... are reasonably calculated to lead to admissible evidence."). The Court concludes that Defendant is entitled to discovery of documents bearing on mitigation and that the employment records are relevant to the issue of mitigation. Plaintiff proffers no other basis to support his request for a protective order; accordingly, Plaintiff's request for a protective order is denied.

Defendant has cross-moved to compel Plaintiff to provide additional information and documentation as to the periods he received disability insurance payments. (*See* Dowdy Decl. Ex. 6 (Letter dated August 13, 2008) at 3.) Defendant's Interrogatory 9 requested that Plaintiff "[d]escribe in detail all sources of income [he] ha[s] had since the termination of [his] employment with the Federal Aviation Administration[.]" (Dowdy Decl. Ex. 1 at 10.) In addition, Defendant's document request sought production of "[a]ll documents, records, and/or writings identified and/or relied upon in answering the above interrogatories." (*Id.* at 12.) Plaintiff's response to Interrogatory 9 was as follows: "Unemployment compensation, salary from positions at PleasanTech Academy Charter School. Disability Insurance payments." (Dowdy Decl., Ex. 5.) No further information has purportedly been provided by Plaintiff with respect to the disability insurance payments he received. (Dowdy Decl. ¶ 16.)

**\*5** Rule 37(a) of the Federal Rules of Civil Procedure provides that, on notice to other parties and all affected persons, "a party may move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The Rule further provides that a motion to compel a discovery response is appropriate when "a party fails to answer an interrogatory submitted under Rule 33" or when "a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B). An "evasive or incomplete" discovery response "must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

The Court finds that Plaintiff is required to provide a supplemental response to Defendant's Interrogatory 9 in accordance with FED. R. CIV. P. 37(a). Defendant specifically requested the name and address of the entity providing "disability insurance benefits," the amounts received by Plaintiff, a description of the nature of the "disabilit[y][ies] claimed by Plaintiff," and copies of all disability insurance policies and all documents submitted by Plaintiff to the insurer(s) in support of his claim for benefits under such disability insurance policies. (Dowdy Decl. Ex. 6.) According to defense counsel, Plaintiff's counsel purportedly agreed that Defendant was entitled to more detailed information about the disability payments than had been provided in Plaintiff's interrogatory response, but Plaintiff has failed to provide such information. (Dowdy Decl. ¶¶ 8, 16.) Moreover, the Court notes that Plaintiff has not filed any opposition to the cross-motion to compel. Therefore, the Court shall grant Defendant's cross-motion to compel.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this 19th day of June 2009,

**ORDERED** that Plaintiff's motion [Doc. No. 15] for a protective order shall be, and is hereby, ***DENIED;*** and it is further

**ORDERED** that Defendant's cross-motion [Doc. No. 17] to compel shall be, and is hereby, ***GRANTED;*** and it is further

**ORDERED** that Plaintiff shall provide a response to Defendant's Interrogatory 9, as supplemented by Defendant's August 13, 2008 letter, by no later than **July 10, 2009.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1748860

## Footnotes

1    The Back Pay Act provides, in relevant part, as follows:

> An employee of an agency who ... is found by appropriate authority under applicable law ... to have
> been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or
> reduction of all or part of the pay, allowances, or differentials of the employee—
>
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel
> action was in effect—
>
> (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the
> employee normally would have earned or received during the period if the personnel action had not
> occurred, less any amounts earned by the employee through other employment during that period[.]
>
> 5 U.S.C. § 5596(b)(1)(A)(i).

2    As noted above, Defendant in this case bears the burden of proving a failure to mitigate. ⚑ *Booker,* 64 F.3d
at 864.

3    Furthermore, while Plaintiff has provided W–2s, 1099s, and a declaration to demonstrate his post-termination
employment income, the Court rejects the argument that these documents preclude Defendant from seeking
employment records by way of subpoena.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PETER J. MCDANIELS,

                    Plaintiff,

        v.

KATHLEEN PREITO, et al.,

                    Defendants.

CASE NO. 3:17-cv-05801-RBL-DWC

ORDER DENYING MOTION TO
SERVE AND MOTION FOR
EXTENSION OF DISCOVERY
DEADLINE

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

States Magistrate Judge David W. Christel. Plaintiff Peter J. McDaniels, proceeding *pro se* and

*in forma pauperis*, filed this lawsuit on October 4, 2017. Dkt. 1. Pending before the Court is

Plaintiff's Motion to Serve Subpoena (Dkt. 33) and Motion for Extension of Time (Dkt. 34).

After review of the record, both Motions (Dkts. 33, 34) are denied.

## I.    Motion to Serve Subpoena

Plaintiff has filed a Motion to Serve Subpoena, asking the Court to direct the Clerk to

issue subpoenas for video tapes allegedly in possession of Defendants. Dkt. 33. Generally, pro se

ORDER DENYING MOTION TO SERVE AND
MOTION FOR EXTENSION OF DISCOVERY
DEADLINE - 1

parties may be entitled to the issuance of a subpoena commanding the production of documents from a nonparty, subject to certain requirements. *See* Fed. R. Civ. P. 26(b), 34(c), 45. However, courts "will consider granting such a request only if the documents sought from the nonparty are not equally available to Plaintiff and are not obtainable from Defendant through a request for production." *Sessing v. Sherman*, No. 1:13-cv-01684-LJO-MJS (PC), 2016 WL 5093929 at *2 (E.D. Cal. July 18, 2016) (citing Fed. R. Civ. P. 34); *see also Kitchens v. Tordsen*, No. 1:12-cv-0105-SWI-MJS (PC), 2014 WL 4418108 at *1 (E.D. Cal. Sept. 5, 2014). Before the Court will consider serving a subpoena, a plaintiff must first attempt to acquire the materials through the discovery process and then, if a defendant refuses to produce the discovery, filing a motion to compel. *See Sessing*, 2016 WL 5093929 at *2; *Kitchens*, 2014 WL 4418108 at *1.

Here, Plaintiff requests the Court direct the Clerk to issue subpoenas regarding two surveillance videos allegedly in Defendants' possession and containing allegedly relevant evidence. Dkt. 33. However, Plaintiff has not shown whether he attempted to utilize the discovery process to acquire these videos and the record reflects Plaintiff has not filed a motion to compel attempting to acquire the videos. *See* Dkt. 19. Further, Defendants have stated serving the subpoena would be fruitless because the video surveillance Plaintiff requests never existed.[1] Dkt. 35. Thus, Plaintiff is not entitled to have the Court direct service of his subpoenas. Therefore, the Court denies Plaintiff's Motion to Serve Subpoena (Dkt. 33).

## II.     Motion for Extension of Time

Pursuant to Federal Rule of Civil Procedure 16(b)(4), a scheduling order may be modified for good cause and with the judge's consent. Plaintiff requests an extension of 90 days

---

[1] Plaintiff argues Defendants should be subject to sanctions because he alleges the videos did exist, but Defendants purposefully destroyed them. Dkt. 39, p. 3. However, Plaintiff has provided no evidence to support this allegation, and so the Court declines to impose sanctions at this time.

ORDER DENYING MOTION TO SERVE AND
MOTION FOR EXTENSION OF DISCOVERY
DEADLINE - 2

because "the defendants have produced ZERO responses" to his discovery requests. Dkt. 34.
Defendants responded, stating that they are working with Plaintiff on his discovery requests to
see if any outstanding discovery issues can be resolved with supplemental answers. Dkt. 37.
They also state they have provided Plaintiff with 743 pages of responsive documents in response
to Plaintiff's 281 discovery requests as of August 20, 2018. Dkt. 38. They further note they
received additional discovery requests on August 10, 2018, which they were still processing as of
August 20, 2018. *Id*.

Based on the record before the Court, an extension of the discovery period is not
warranted here. The Court's original Scheduling Order, filed on December 15, 2017, set the
discovery deadline to June 13, 2018. Dkt. 18. Upon a motion from Plaintiff, the Court extended
that deadline to September 14, 2018. Dkt. 32. Plaintiff has thus had nine months to complete
discovery. Though Plaintiff argues Defendants have not provided him discovery, the evidence
submitted by Defendants contradicts that assertion. *See* Dkt. 37. The record reflects Defendants
have consistently worked with Plaintiff to resolve discovery disputes, have already produced
substantial discovery, and are continuing to process Plaintiff's additional discovery requests. The
Court thus finds Plaintiff has not shown good cause for an extension of the discovery deadline.
Therefore, the Court denies Plaintiff's Motion for Extension of Time (Dkt. 34).

1  **III.    Conclusion**

2          For the reasons stated herein, Plaintiff's Motion to Serve Subpoena (Dkt. 33) and Motion

3  for Extension of Time (Dkt. 34) are denied. The discovery deadline remains at September 14,

4  2018, and the dispositive motions deadline remains at October 12, 2018.

5          Dated this 19th day of September, 2018.

6

7                                                David W. Christel

8                                                United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

KeyCite Yellow Flag - Negative Treatment

Declined to Follow by   Shirazi v. Childtime Learning Center, Inc.,
W.D.Okla.,   October 31, 2008

2006 WL 1627020
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Jacksonville Division.

Sarah MAXWELL, Plaintiff,

v.

HEALTH CENTER OF LAKE CITY, INC., Defendant.

No. 3:05-CV-1056-J-32MCR.
|
June 6, 2006.

**Attorneys and Law Firms**

Philip Daniel Williams, Magid & Williams, P.A.,
Jacksonville, FL, for Plaintiff.

Weston F. Smith, Deacon & Moulds, P.A., St. Petersburg, FL,
for Defendant.

*ORDER*

MONTE C. RICHARDSON, Magistrate Judge.

**\*1   THIS CAUSE** is before the Court on the Amended
Motion to Quash and/or Motion for Protective Order (Doc.
16) filed by Plaintiff on May 10, 2006. Defendant filed
its response to the motion on May 19, 2006 (Doc. 19).
Accordingly, the motion is now ripe.

**I. *BACKGROUND***

This is an action alleging race discrimination, racial
harassment, and retaliation in violation of the Civil Rights Act
of 1886, as amended by the Civil Rights Act of 1991, 42
U.S.C. § 1981, *et seq.,* and Title VII of the Civil Rights Act, 42
U.S.C. § 2000, *et seq.,* and alleging unlawful discrimination
and retaliation in violation of the Florida Civil Rights Act
of 1992, Fla. Stat. 760, *et seq.,* and Fla. Sta. 440.205,
respectively. (Doc. 10). Plaintiff seeks relief in the form of
economic damages, back pay, front pay, compensatory and
emotional distress damages, injunctive relief, prejudgment
interest, reimbursement for attorney's fees and costs, punitive

damages and any other relief the court deems just and
appropriate. *Id.* On February 10, 2006, the Court entered a
scheduling order setting the discovery deadline for September
15, 2006. (Doc. 11). The parties are currently engaged in
the discovery process and on April 25, 2006, Defendant
served Plaintiff with a Notice of Production from Non-
Party with attached subpoenas directed to six employers with
whom Plaintiff was previously employed prior to working for
Defendant. (Doc. 16, pp. 1-2).

The proposed subpoenas request Plaintiff's entire personnel
file from each of these prior employers. (Doc. 16, Ex. 2).
Plaintiff objected to the Notice of Production from Non-Party
by filing this Motion. On May 10, 2006, this Court asked
Defendant to refrain from serving the subpoenas, if it had
not already done so, until this issue is resolved. (Doc. 15).
On May 19, 2006, Defendant filed its opposition to Plaintiff's
motion and stated that it had not yet served the subpoenas and
it would not issue them until a ruling has been made by this
Court. (Doc. 19, p. 2, fn.2).

In the instant motion, Plaintiff asks the Court to either
quash the subpoenas or enter a protective order because
the Defendant is seeking to discover evidence that is not
admissible nor reasonably calculated to lead to the discovery
of admissible evidence. (Doc. 16). Additionally, Plaintiff
argues Defendant is embarking on an unlawful fishing
expedition in an effort to discover evidence of wrongful
conduct on the part of Plaintiff. *Id.* Defendant, on the
other hand, claims that the personnel files are relevant to
the issues at hand. (Doc. 19). Specifically, it argues, the
subpoenas are "reasonably calculated to lead to admissible
evidence as to work history, wage history, prior complaints
of the nature Plaintiff is alleging against Defendant, and
medical information relevant to Plaintiff's alleged damages
for emotional distress." (Doc. 19, p. 6). Defendant further
states that in addition to seeking relevant evidence pertaining
to the aforementioned topics, it is possible that discovery
of the Plaintiff's personnel files may lead to after acquired
evidence. *Id.*

**II. *ANALYSIS***

**\*2**   Plaintiff brings her motion pursuant to Rules 45 and 26
of the Federal Rules of Civil Procedure. As such, the Court
will briefly discuss each Rule.

**A. Fed.R.Civ.P. 45**

Ordinarily a party does not have standing to quash a subpoena served on a third party [1] unless the party seeks to quash based on a personal right or privilege relating to the documents being sought. *See State of Fla. ex rel. Butterworth v. Jones Chemicals, Inc.,* 1993 WL 388645 at *2 (M.D.Fla.1993) ("[g]enerally, it is the person to whom a subpoena is directed who has standing to seek a motion to quash");

*Stevenson v. Stanley Bostitch, Inc.,* 201 F.R .D. 551, 555 n. 3 (N.D.Ga.2001) ("a party has standing to challenge a subpoena when she alleges a 'personal right or privilege with respect to the materials subpoenaed' "). Here, Plaintiff argues that she is asserting a personal right in that Defendant is seeking her personnel files, which are by their very nature confidential, from six of her prior employers.

"Personnel files and records and [sic] are confidential in nature and ... in most circumstances, they should be protected from wide dissemination. *Williams v. Board of County Comm'rs,* No. Civ. A. 98-2485-JTM, 2000 WL 133433, at *1 (D.Kan. Jan. 21, 2000) (citations omitted). When, however, a Plaintiff brings a claim for discrimination and seeks damages for emotional distress, Plaintiff may have waived some of her privacy interests. *See e.g., Brady v. Central Indiana Regional Blood Center,* No. 1:99-MC-19, 1999 WL 33912610, *1 (N.D.Ind. Oct. 6, 1999) (stating that by bringing a Title VII claim of harassment or retaliatory discharge, the plaintiff waives most of her privacy interests). While it is arguable that Plaintiff has standing to object to the non-party subpoenas based on her personal right regarding the materials subpoenaed, the Court notes that she may have waived such rights by the very nature of her allegations against Defendant. Nevertheless, the Court does not need to decide whether Plaintiff has standing under Rule 45 at this time because Plaintiff also asserts Rule 26 as a basis for seeking a protective order. Because it is clear that Plaintiff has standing under Rule 26, the Court will analyze this motion pursuant to the applicable standards set forth by Rule 26.

**B. Fed.R.Civ.P. 26**

Rule 26(c) provides that "upon motion by a party ... and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). The party seeking the protective order has the burden to demonstrate good cause. *Id.* In determining whether good cause exists, the federal courts have created their own balancing of interests approach.

*See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1313 (11th Cir.2001) ("Federal courts have superimposed a balancing of interests approach for Rule 26's good cause requirement.") (citations omitted). Thus, this Court must balance Defendant's interest in obtaining Plaintiff's personnel files against Plaintiff's interest in keeping the files confidential. *See id.* Moreover, since this matter concerns non-parties, the Court should also consider the interests of the non-parties and whether Defendant can obtain the information it requests from another source.

 **\*3** As noted above, Plaintiff argues that Defendant does not seek evidence which will be admissible or reasonably calculated to lead to the discovery of admissible evidence. The scope of discovery is governed by Rule 26, which permits the parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The term "relevant" should be " 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case.' " *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. at 430 (quoting, *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)).

Courts have discretion, however, to limit discovery when such discovery is, *inter alia,* unreasonably cumulative or obtainable from some other source that is more convenient, less burdensome, or less expensive. Fed.R.Civ.P. 26(b)(2). Courts may also limit discovery in an effort to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c).

Here, Defendant is requesting Plaintiff's entire personnel files from six of her prior employers. Defendant claims that these documents may lead to admissible evidence in that they may lead to evidence of "Plaintiff's work history, wage history, prior complaints of the nature Plaintiff is alleging against Defendant, and medical information relevant to Plaintiff's alleged damages for emotional distress." (Doc. 19, p. 6).

The Court finds that while some of the documents in Plaintiff's personnel files may reasonably lead to admissible evidence, the blanket requests for her entire personnel file are overly broad. Consequently, the Court will grant

Plaintiff's motion for a protective order and thus, Defendant is prohibited from seeking discovery pursuant to the subpoenas. Defendant may, however, redraft subpoenas which are more limited in scope and which appear to be reasonably calculated to lead to the discovery of admissible evidence. Because this Court finds some of the evidence Defendant seeks is potentially relevant, it will address each of Defendant's arguments pertaining to the relevancy of the evidence it seeks to discover, in an effort to assist the parties and prevent further disputes on these issues.

### i. Prior Wage History & Damages

Defendant seeks salary and payroll history from each of Plaintiff's previous employers and states that "such records will provide a basis for damages in indicating Plaintiff's prior wage history." (Doc. 19, p. 4). Defendant's reasoning, however, is defective. While a former employee's subsequent salary is relevant to the issue of mitigation of damages, Defendant has failed to show why her prior salary has any relevance to damages. *See* *Graham v. Casey's General Stores,* 206 F.R.D. 251, 255 (S.D.IN.2002) (granting the plaintiff's motion to quash after finding that Defendant failed to show why salary information from a previous employer is in any way relevant to damages under a discrimination claim). The Court agrees with Plaintiff and finds that Plaintiff's records showing her prior wage history are not relevant to the issue of damages. [2]

### ii. Prior Work History

 **\*4** Defendant also argues that Plaintiff's personnel files will help it identify Plaintiff's prior work history, including any periods of unemployment. (Doc. 19, p. 5). Again, Defendant offers no explanation as to why Plaintiff's prior work history is relevant to this matter. Moreover, and as Plaintiff points out, her prior performance at her previous jobs is not reasonably calculated to lead to admissible evidence because Fed.R.Evid. 404 would exclude such evidence. *See* *Neuren v. Adduci, Mastiani, Meeks & Schill,* 43 F.3d 1507, 1511(D.C.Cir.1995) (holding that district court erred in admitting evidence of plaintiff's performance at a previous law firm because such evidence of a person's character was not admissible to prove Plaintiff acted in conformance therewith, under Fed.R.Evid. 404). Thus, this Court finds that documents showing Plaintiff's prior work history, including periods of unemployment, have no relevance on her performance or periods of unemployment during the time she was employed by Defendant. Moreover, Defendant fails to offer, and the

Court cannot conjure, any additional likely explanations as to why such evidence could be relevant.

### iii. Emotional Distress Claims

Defendant further contends that it should be allowed to obtain information relating to Plaintiff's health insurance and/or medical information which could lead to evidence directly related to Plaintiff's claims of emotional distress based upon her allegations against Defendant. (Doc. 19, p. 5). This Court agrees with Defendant that discovery of this type of evidence may in fact lead to admissible evidence, however, in an effort to spare third parties the expense and cost of responding to the subpoenas, the Court finds that Defendant ought to first attempt to obtain such evidence directly from Plaintiff pursuant to other available avenues under the Federal Rules of Civil Procedure. Importantly, Defendant has not stated that it has tried to obtain such information directly from Plaintiff through other means. The Court urges the parties to attempt to work out these discovery issues amongst themselves before taking the more intrusive step of subpoenaing non-parties. If they are unable to do so, Defendant is not prevented from redrafting subpoenas which are appropriately limited in scope.

### iv. Prior Complaints of Racial Discrimination, Harassment or Allegations of a Hostile Work Environment

Defendant asserts that it also seeks evidence relating to any prior complaints of racial discrimination, harassment or allegations of hostile work environs that Plaintiff may have raised at any of her prior places of employment. (Doc. 19, p. 5). If Plaintiff has previously filed frivolous claims, such information could weigh on her credibility and may be compelling enough to admit at trial. *See* *Graham v. Casey's General Stores,* 206 F.R.D. at 256; *see also* *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490, (7th Cir.1998) (holding that evidence that plaintiff had sued three of his former employers was admissible to show plaintiff's motive, state of mind, credibility, modus operandi, and to cast doubt on plaintiff's claim for emotional damages). Consequently, the Court finds that evidence relating to potential prior complaints of discrimination, harassment or allegations could be relevant and possibly admissible if the evidence shows such claims were frivolous.

### v. After Acquired Evidence

**\*5** Finally, Defendant argues that Plaintiff's personnel files may provide information relevant to its after-acquired evidence defense. (Doc. 18, p. 5). While the Supreme Court has recognized that the after-acquired evidence defense can be used in certain instances to limit damages and remedies available, it also cautioned that employers should not, as a routine matter, undertake extensive discovery into an employee's background or performance to resist claims.

*McKennon v. Nashville Banner Pub. Co,* 513 U.S. 352, 360-63, 115 S.Ct. 879 (1995).[3] In fact, various courts have applied the *McKennon* reasoning to hold that although the after-acquired evidence doctrine can be used to limit an employee's remedies based on evidence found during discovery, it should not be used to independently initiate discovery. *See e.g.,* *Premer v. Corestaff Services, L.P.,* 232 F.R.D. 692, 693 (M.D.Fla.2005) (explaining that although the after-acquired evidence doctrine provides employers a mechanism to limit an employee's remedies based on evidence found during discovery, it should not be used as an independent basis to initiate discovery"). Rather, Defendant must have some preexisting basis to believe that after-acquired evidence exists before it can take on additional discovery. *See Preston v. American Express Travel Related Servs. Co., Inc.,* Case No. 3:00 cv312-J-25TJC (2001) (citing *Naszke v. Federal Express Corp.,* 1996 U.S. Dist. LEXIS 1795 (N.D.Ill.1996)) (relying on the after-acquired evidence doctrine in part when it allowed the defendant to reopen discovery after defendant had found evidence of a disciplinary memorandum addressed to plaintiff). The Court finds that Defendant has failed to assert any pre-existing basis for the belief that after-acquired evidence of Plaintiff's wrongdoing exists. As such, Plaintiff cannot use this doctrine to initiate discovery that is otherwise not relevant.

### III. *CONCLUSION*

Defendants requests for Plaintiff's personnel files from six of her prior employers are overly broad. Some of the information contained in these files may, however, be relevant. Consequently, this Court will grant Plaintiff's motion for a protective order. The parties are encouraged to confer and attempt to agree on some of the issues Defendant seeks to discover. Moreover, Defendant should attempt to obtain as much of the evidence as possible directly from Plaintiff. If, after the parties confer, Defendant still seeks information which is not obtainable through Plaintiff, then it may redraft non-party subpoenas which are more limited in their scope. The Court cautions Defendant to avoid discovery requests that amount to mere fishing expeditions.

Accordingly, after due consideration, it is

**ORDERED:**

1. Plaintiff's Amended Motion to Quash and/or Motion for Protective Order (Doc. 16) is **GRANTED.**

2. Plaintiff's Motion to Quash and/or Motion for Protective Order (Doc. 14) is **DENIED** as Moot.

**\*6 DONE AND ORDERED** in Chambers in Jacksonville, Florida this *6th* day of June, 2006.

### All Citations

Not Reported in F.Supp.2d, 2006 WL 1627020

## Footnotes

1    Defendant inadvertently cited to the Florida Rules of Civil Procedure in its Notice of Production from Non-Party, however, Defendant recognizes that this was a technical error and if given the opportunity, it would correct the mistake and issue the subpoenas for non-party pursuant to Fed.R.Civ.P. 45.

2    As an aside, even if such records were relevant, Defendant has made no showing that these records could not be obtained directly from Plaintiff.

3    Although the *McKennon* case involved allegations of violations of the ADEA, the Eleventh Circuit has held

that the holding of *McKennon* is also applicable to claims brought under Title VII. *Wallace v. Dunn Const.*
*Co., Inc.,* 62 F.3d 374, 378 (11th Cir.1995).

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by   United States ex rel. Ortiz v. Mount Sinai Hospital,
S.D.N.Y.,   March 11, 2008

2008 WL 4861840

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Camille MIRKIN, Plaintiff,

v.

WINSTON RESOURCES, LLC, Defendant.

No. 07 Civ. 02734(JGK)(DF).

|

Nov. 10, 2008.

### OPINION AND ORDER

DEBRA FREEMAN, United States Magistrate Judge.

**\*1**  In this employment discrimination action, plaintiff Camille Mirkin ("Plaintiff") claims that her former employer, defendant Winston Resources, LLC ("Defendant") unlawfully terminated her employment for reasons related to, *inter alia,* her gender, her pregnancy, and her age. Currently before this Court is a letter motion by Plaintiff to quash Defendant's deposition subpoena of Christopher Gamble, Plaintiff's supervisor at a subsequent employer, Response Companies, a company for which Plaintiff is also no longer working. (*See* Letter to the Court from Dominique N. Ferrera, Esq ., dated Oct. 10, 2008.) Plaintiff argues that evidence regarding her job performance at Response Companies is irrelevant to the claims asserted in this action and that enforcement of the subpoena would negatively affect her current and future employment prospects and subject her to unnecessary annoyance and embarrassment. (*See id.*) Defendant, on the other hand, argues that Plaintiff lacks standing to challenge the subpoena and that, in any event, the discovery sought is relevant to its defenses in the action and should be allowed. (*See* Letter to the Court from Melissa L. Morais, Esq., dated Oct. 24, 2008.) For the following reasons, Plaintiff's motion to quash is DENIED.

As a threshold matter, a plaintiff has standing to quash a subpoena of a non-party where the plaintiff asserts a legitimate privacy interest in the information sought. *See*

*Chazin v. Lieberman,* 129 F.R.D. 97, 98 (S.D.N.Y.1990). Here, Plaintiff has a legitimate privacy interest in information regarding her performance at a subsequent employer and, therefore, has standing to bring her motion. *See During v. City Univ. of N.Y.,* No. 05 Civ. 6992(RCC)(RLE), 2006 U.S. Dist. LEXIS 10133, at \*3-4, 2006 WL 618764 (S.D.N.Y. Mar. 9, 2006), *rev'd on other grounds,* 2006 U.S. Dist. LEXIS 53684, 2006 WL 2192843 (S .D.N.Y. Aug. 1, 2006).

As for the merits of Plaintiff s motion, Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." " ' 'Relevance' for purposes of discovery, moreover, is synonymous with 'germane' and ... it should not be read as meaning 'competent' or 'admissible.' " *Johnson v. Nyack Hosp.,* 169 F.R.D. 550, 556 (S.D.N.Y.1996) (citation omitted). As Defendant argues, Mr. Gamble, Plaintiff's former supervisor at Response Companies, may be able to testify as to Plaintiff's lack of certain job skills, providing evidence that would be relevant to a defense that Plaintiff was terminated for legitimate, non-discriminatory reasons.

Even where the discovery sought is relevant, however, this Court must weigh a party's right to obtain that discovery against the burden imposed on the opposing party. *During,* 2006 U.S. Dist. LEXIS 53684, at \* 15, 2006 WL 2192843 (citing Fed.R.Civ.P. 26(b)(2), 26(c)). Further, the Court may issue an order to protect a party from undue annoyance or embarrassment. Fed.R.Civ.P. 26(c). In the circumstances of this case, the Court finds that the burden imposed on Plaintiff by Defendant's subpoena is slight and docs not outweigh Defendant's right to obtain the information sought. First, Plaintiff could have reasonably expected that matters relating to her employment performance would be disclosed in this litigation. *During,* 2006 U.S. Dist. LEXIS 53684, at \* 16, 2006 WL 2192843 ("A litigant himself must reasonably anticipate that his personal matters will be disclosed, while a non-party having no stake in the litigation retains a greater expectation of privacy.") (citation and internal quotations removed). Second, as Plaintiff is no longer employed by Response Companies, and, as Plaintiff does not claim that Mr. Gamble is currently engaged in a job search on her behalf, the cases on which she relies to demonstrate an undue burden arc distinguishable. Third, although Plaintiff states that she continues to rely on Response Companies for job references, the Confidentiality Agreement already in place in this action

could be extended to prevent Mr. Gamble and Response Companies from disclosing confidential information to others, thereby mitigating the burden on Plaintiff. Finally, as both parties have noted, this litigation and the underlying fact of Plaintiff's termination from Defendant's employ are already known to many in Plaintiff's industry. For this reason, the additional embarrassment caused by Mr. Gamble's deposition would be marginal, at most.

**\*2** The Court notes that, by agreement of the parties, discovery in this case is currently being held in abeyance pending the outcome of a mediation between them. The Court, however, has recently received a letter from Plaintiff's counsel, expressing concern that the scheduling of the anticipated mediation has been delayed and suggesting that, to avoid further delay, discovery and the mediation should now proceed "along parallel paths." (Letter to the Court from Dominique N. Fe rre ra, Esq., dated Nov. 5, 2008.) Under the circumstances, counsel arc directed to confer in good faith regarding a modified discovery schedule and to submit such a schedule to the Court for its consideration. Although the motion to quash the deposition of Mr. Gamble is denied, that deposition should not go forward until the parties have reached agreement on its scheduling, or the Court has issued a revised scheduling order.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4861840

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206 (2002)

31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

🚩 KeyCite Yellow Flag - Negative Treatment

Declined to Extend by   Miotox LLC v. Allergan, Inc.,   C.D.Cal.,   June 2, 2016

307 F.3d 1206

United States Court of Appeals, Ninth Circuit.

Alvin K. PHILLIPS, as Personal Representative of the ESTATES OF Timothy BYRD, Darrell L. Byrd, and Angela Byrd, deceased, and as Guardian of Samuel Byrd, minor child, Plaintiffs–Appellees,

v.

GENERAL MOTORS CORPORATION, Defendant–Appellant, with Los Angeles Times, Intervenor–Appellee.

No. 01–35126

|

Argued and Submitted March 6, 2002.

|

Filed Oct. 15, 2002.

**Synopsis**

Newspaper intervened in settled products liability case against truck manufacturer, seeking access to information produced by manufacturer as to total number and aggregate dollar amount of settlements in prior cases involving pickup truck fuel-fed fires. The United States District Court for the District of Montana, Donald W. Molloy, J., 🚩 126 F.Supp.2d 1328, ruled in newspaper's favor. Manufacturer appealed. The Court of Appeals, Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation, held that: (1) manufacturer waived right to appeal magistrate judge's order requiring it to produce confidential settlement information during discovery; (2) remand to permit district court to conduct or discuss its good cause analysis was warranted; (3) when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released; and (4) consideration, for first time on appeal, of newspaper's alleged First Amendment right of access was not warranted.

Vacated and remanded.

Superseding 🚩 289 F.3d 1117.

**Procedural Posture(s):** On Appeal.

West Headnotes (16)

**[1]**  **United States Magistrate Judges** 👈 Objections to report and recommendation

Litigant waived right to appeal magistrate judge's order requiring litigant to produce confidential settlement information during discovery when it failed to file objection to order within 10 days, as required by rule. Fed.Rules Civ.Proc.Rule 72(a), 28 U.S.C.A.

7 Cases that cite this headnote

**[2]**  **Federal Courts** 👈 Families and children

Court of Appeals reviews a lower court's decision to grant, lift, or modify a protective order for abuse of discretion.

54 Cases that cite this headnote

**[3]**  **Federal Courts** 👈 Procedural Matters

Court of Appeals reviews de novo whether district court used correct legal standard in determining whether it should have granted a protective order.

74 Cases that cite this headnote

**[4]**  **Federal Civil Procedure** 👈 Protective orders

Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows good cause why a protective order is necessary. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

300 Cases that cite this headnote

**[5]**  **Federal Civil Procedure** 👈 Protective orders

For good cause to exist, the party seeking protection from public disclosure of documents

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 28 of 39

Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206 (2002)

31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

and information produced during discovery bears the burden of showing that specific prejudice or harm will result if no protective order is granted. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

1243 Cases that cite this headnote

**[6]** **Federal Civil Procedure** 🔑 Protective orders

If a court finds that particularized harm will result from public disclosure of information obtained via discovery, it balances the public and private interests to decide whether a protective order is necessary. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

259 Cases that cite this headnote

**[7]** **Federal Civil Procedure** 🔑 Protective orders

Manufacturer bore burden of proving that protective order was necessary in contesting intervening newspaper's request for access to settlement information produced as discovery in products liability case where magistrate judge never conducted "good cause" analysis, but instead placed settlement information, on an interim basis, within existing share protective order to which parties had previously stipulated. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

19 Cases that cite this headnote

**[8]** **Federal Courts** 🔑 Need for further evidence, findings, or conclusions

Remand for reconsideration of order granting intervening newspaper access to confidential settlement information produced by manufacturer during products liability case was warranted when it appeared that district court never engaged in required good cause analysis and possibility existed that court's decision was based upon failure to recognize its authority to grant protective orders for confidential settlement agreements; to the extent that order had such basis, it was erroneous, necessitating consideration of good cause issue, and to the extent no such error occurred, court needed to identify and discuss factors considered in good

cause analysis so as to permit appellate review. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

54 Cases that cite this headnote

**[9]** **Federal Civil Procedure** 🔑 Protective orders

District courts have broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information. Fed.Rules Civ.Proc.Rule 26(c), (c)(7), 28 U.S.C.A.

115 Cases that cite this headnote

**[10]** **Records** 🔑 Right of Access and Limitations Thereon in General

**Records** 🔑 Material released in discovery

Not only can the public generally gain access to unprotected information produced during discovery, but it also has a federal common law right of access to all information filed with the court.

48 Cases that cite this headnote

**[11]** **Records** 🔑 Presumptions, inferences, and burden of proof

Federal common law right of access to information filed with court creates a strong presumption in favor of access to judicial documents which can be overcome only by showing sufficiently important countervailing interests.

94 Cases that cite this headnote

**[12]** **Records** 🔑 Particular Judicial Records

In deciding whether sufficient countervailing interests exist to overcome strong presumption in favor of access to judicial documents, pursuant to federal common law right of access, the courts will look to the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the

Case 2:23-cv-00186-TL   Document 35-1   Filed 12/13/23   Page 29 of 39

Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206 (2002)

31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

material for scandalous or libelous purposes or infringement upon trade secrets.

102 Cases that cite this headnote

**[13]     Federal Courts** 🔑 Depositions and discovery

Court of Appeals reviews de novo whether the presumption of access under federal common law right of access to judicial documents applies to particular document.

54 Cases that cite this headnote

**[14]     Records** 🔑 Presumptions, inferences, and burden of proof

Strong presumption of access arising under federal common law right of access to information filed with the courts does not apply to materials filed with the court pursuant to a valid protective order.

37 Cases that cite this headnote

**[15]     Records** 🔑 Presumptions, inferences, and burden of proof

When a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released.

143 Cases that cite this headnote

**[16]     Federal Courts** 🔑 Constitutional questions

**Federal Courts** 🔑 Failure to mention or inadequacy of treatment of error in appellate briefs

Court of Appeals would not address issue of whether intervening newspaper had First Amendment right to settlement information produced by manufacturer in products liability case when district court did not adjudicate issue and parties barely raised it in their briefs.
U.S.C.A. Const.Amend. 1.

**Attorneys and Law Firms**

**\*1208**  William E. Jones & Lucy T. France, Garlington Lohn & Robinson, PLLP, Missoula, MO; Richard A. Cordray, Andrew B. Clubok & Eric R. Claeys, Kirkland & Ellis, Washington, DC, for the defendant-appellant.

James H. Goetz, Goetz, Gallik, Baldwin & Dolan, P.C., Bozeman, MO; James E. Butler, Jr. & Peter J. Daughtery, Butler, Wooten, Overby, Pearson, Fryhofer & Daughtery, Columbus, GA, for the plaintiffs-appellees.

Kelli L. Sager & Rochelle L. Wilcox, Davis Wright Tremaine LLP, Los Angeles, CA; Peter M. Meloy & Jennifer S. Hendricks, Meloy Law Firm, Helena, MO, for the intervenor-appellee.

Lee Levine & Seth D. Berlin, Levine Sullivan & Koch, L.L.P., Washington, DC; David A. Schulz, Clifford Chance Rogers & Wells LLP, New York, NY; Thomas W. Newton & James W. Ewert, California Newspaper Publishers Assoc., Sacramento, CA; Harold W. Fuson, Jr., Judith L. Fanshaw & Scott A. Wahrenbrock, The Copley Press, Inc., La Jolla, CA; Nancy Gillespie, Dow Jones & Co., Inc., New York, NY; Karole Morgan–Prager & Stephen J. Burns, McClatchy Newspapers, Inc., Sacramento, CA; George Freeman, The New York Times, New York, NY; Guy Kerr, Belo Corp., Dallas, TX; Alan Lewis, The Herst Corp., New York, NY; Edward P. Davis, Jr., Guylyn R. Cummins, James M. Chadwick, Gray Cary Ware & Freidenrich LLP, Palo Alto, CA; Mary Ann Werner, Eric Lieberman, The Washington Post, Washington, DC, for the Amici Curiae.

Appeal from the United States District Court for the District of Montana; Donald W. Molloy, District Judge, Presiding. D.C. Nos. CV–98–168–M–DWM to CV–98–171–M–DWM.

Before ALARCÓN and SILVERMAN, Circuit Judges, and BREWSTER,[*] Senior District Judge.

**OPINION**

BREWSTER, Senior District Judge.

General Motors Corporation ("GM") appeals an order of the district court granting the intervenor, the Los Angeles Times, access to confidential settlement information produced by GM under a protective order during discovery in the

31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

underlying **\*1209** action. In ordering the documents released to the public, the district court determined (1) the protective order to prevent disclosure of this information was not appropriate, and (2) the Los Angeles Times had a federal common law right of access to these materials. GM appeals, arguing the district court applied incorrect legal standards in deciding whether disclosure was appropriate. We have jurisdiction pursuant to 28 U.S.C. 1291. *See* *Beckman Indus. Inc. v. International Ins. Co.,* 966 F.2d 470, 472 (9th Cir.1992). We vacate and remand for further proceedings.

## I. Background

On November 20, 1998, the underlying plaintiffs in this case, Darrell and Angela Byrd and their two minor sons, Timothy and Samuel, filed a complaint for damages against GM allegedly caused by a defect in the gas tank of a GM C/K pickup truck. Before discovery, both sides stipulated to a "share" protective order that allowed the parties to share all information covered under the order with other litigants in similar cases, but not the public. The order covered "Executive Committee Documents, production, sales and profit forecasts, procedures for evaluating defects and non-compliance with federal safety standards and meetings minutes of the truck and bus fuel system coordination groups."

One of GM's experts testified by deposition that information about the amount GM paid in previous settlements involving C/K pickup post-collision fuel-fed fires could be important to his analysis of punitive damages. Accordingly, the plaintiffs filed a motion to compel GM to produce this settlement information either in the form of individual or aggregate settlement numbers. GM had previously settled cases involving C/K pickup trucks pursuant to agreements which provided that both parties would keep the terms confidential and, thus, vigorously contested the motion. On August 14, 2000, the magistrate judge partially granted the plaintiffs' motion and directed GM to produce the total number and aggregate dollar amount of all settlements involving C/K pickup truck fuel-fed fires. At GM's request, the magistrate judge ordered this discovery pursuant to the share "Protective order in place subject to further review and determination by Judge Molloy as to whether the information produced should be subject to his Order." Prior to this appeal, GM did not file any objection to this ruling.

Pursuant to the magistrate court's order, on or about August 24, 2000, GM produced under seal the total number and aggregate dollar amount of its previous settlements for C/K pickups fuel tank claims. In addition, GM included a computed arithmetic average settlement award. On August 30, 2000, plaintiffs filed a discovery-sanctions motion against GM and attached to their motion as Exhibit 8 under seal a copy of the settlement information produced by GM pursuant to the August 14, 2000 order. The plaintiffs contended that GM had violated the magistrate judge's order by additionally including the calculation of the "average" settlement award, which had not been requested. The case settled in October 2000 before the court had an opportunity to rule on the discovery-sanctions motion. The court dismissed the action on November 14, 2000.

After the case had been dismissed, the Los Angeles Times moved to intervene, and requested the district court to unseal Exhibit 8. The Los Angeles Times provided three reasons why the lower court should release the confidential settlement information: (1) this information did not deserve a protective order; (2) the LA Times has a common law right of access to Exhibit 8; and (3) the newspaper had a **\*1210** First Amendment right to these materials. On January 5, 2001, the district court ordered the release of the settlement information on the grounds that (1) it was not covered under the share protective order stipulated by the parties and (2) it independently did not deserve a protective order. Furthermore, the court found the common law right of access permitted the Los Angeles Times to receive the information contained in Exhibit 8. The lower court did not address the First Amendment issue. The district court stayed this order pending the resolution of this appeal.

## II. Discussion

General Motors raises three issues on appeal: (1) whether the magistrate judge committed legal error when it ordered GM to produce the settlement information even under a protective order; (2) whether the lower court erred by lifting the protective order; and (3) whether the lower court erred by deciding the Los Angeles Times had a common law right of access to Exhibit 8.

## A. August 14th Order of the Magistrate Judge

 **[1]**  GM argues the magistrate judge committed legal error by ordering GM to produce confidential settlement information during discovery. GM, however, has waived its right to appeal this ruling to this panel. FED. R. CIV. PROC. 72(a) requires an aggrieved party to object to any magistrate order within ten days. If the party does not file any objections within ten days,

Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206 (2002)

31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

it cannot "[assign] as error a defect in the magistrate judge's order." Fed.R.Civ.P. 72(a); *see also* *Simpson v. Lear,* 77 F.3d 1170, 1174 (9th Cir.1995).

## B. Protective Order

**[2]** **[3]** We review a lower court's decision to grant, lift, or modify a protective order for abuse of discretion. *See* *Anderson v. Calderon,* 232 F.3d 1053, 1099 (9th Cir.2000); *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us, Inc.,* 62 F.3d 1217, 1219 (9th Cir.1995). We review *de novo,* however, whether the lower court used the correct legal standard in determining whether it should have granted a protective order. *See* *Kulas v. Flores,* 255 F.3d 780, 783 (9th Cir.2001) (legal issues are reviewed de novo).

**[4]** Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows "good cause" why a protective order is necessary. In *San Jose Mercury News, Inc. v. United States Dist. Ct.,* 187 F.3d 1096, 1103 (9th Cir.1999), the court said, "[i]t is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown." *See also* *In re Agent Orange Product Liability Litig.,* 821 F.2d 139, 145 (2d Cir.1987) ("[I]f good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public."). Rule 26(c) states, in relevant part:

Upon motion by a party or by a person from whom discovery is sought ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ....

FED. R. CIV. P. 26(c), 26(c)(7).

**[5]** **[6]** For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will **\*1211** result if no protective order is granted. *See*

*Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir.1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *see also* *San Jose Mercury News, Inc.,* 187 F.3d at 1102(holding that to gain a protective order the party must make "particularized showing of good cause with respect to any individual document"). If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary. *See* *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995) (citing factors).

**[7]** In this case, the magistrate judge never conducted a "good cause" analysis, but decided to put the settlement information into the existing share protective order, previously stipulated by the parties, on an interim basis subject to "further review and determination" by the district judge. Upon review, the district judge determined that a protective order was not appropriate. [1]

**[8]** It appears, however, that the district court never engaged in a "good cause" analysis, but held that, based on Rule 26(c)(7), *only* trade secrets or other confidential research, development, or commercial information could be protected from disclosure under Rule 26(c). In a letter to the parties, the court below stated it had "reviewed the file for materials that might be trade secrets, proprietary matters, research, development or other commercial information that should be protected under Rule 26(c)." Appellant's Excerpts of Record, 90. The court reiterated this position in its January 5th order denying the protective order. The court noted that the "narrow issue" before the court was whether "information a party seeks to keep quiet does not fall within the *four corners* of Rule 26(c)." *Phillips v. GMC,* 126 F.Supp.2d 1328, 1329 (D.Mont.2001) (emphasis added). Finally, the court implies only certain types of information can be subject to a protective order. The court, commenting upon the type of information covered under the share protective order stipulated to by the parties, claims "this is the kind of information Rule 26(c) recognizes as being legally protectable." *Id.* at 1330.

**[9]** The law, however, gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to,* trade secrets or other confidential research, development, or commercial information. *See* FED. R. CIV. P. 26(c)(7). Rule

31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

26(c) authorizes the district court to issue "*any* order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden." The Supreme Court has interpreted this language as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). The Court continued, by noting that the "trial court is in the best position to weigh the fairly competing needs and interests of the parties affected **\*1212** by discovery. The unique character of the discovery process requires that the *trial court have substantial latitude to fashion protective orders." Id.* (emphasis added); *see also* 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE, Civil § 2036, at 489 (2d ed. 1994) ("Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule.").

Although courts may be more likely to grant protective orders for the information listed in Rule 26(c)(7), courts have consistently granted protective orders that prevent disclosure of many types of information, such as letters protected under attorney-client privilege which revealed the weaknesses in a party's position and was inadvertently sent to the opposing side, *see* KL Group v. Case, Kay, and Lynch, 829 F.2d 909, 917–19 (9th Cir.1987); medical and psychiatric records confidential under state law, *see* Pearson v. Miller, 211 F.3d 57, 62–64 (3d Cir.2000); and federal and grand jury secrecy provisions, *see* Krause v. Rhodes, 671 F.2d 212, 216 (6th Cir.1982). Most significantly, courts have granted protective orders to protect confidential settlement agreements. *See* Hasbrouck v. BankAmerica Housing Serv., 187 F.R.D. 453, 455 (N.D.N.Y.1999); Kalinauskas v. Wong, 151 F.R.D. 363, 365–67 (D.Nev.1993).

If the district court decision was based on a failure to recognize that lower courts have the authority to grant protective orders for confidential settlement agreements, it was erroneous, and the district court must determine whether good cause exists. If the lower court did not make this legal error, then it needs to identify and discuss the factors it considered in its "good cause" examination to allow appellate review of the exercise of its discretion. The decision to lift the protective order is remanded and the lower court is instructed to conduct a "good cause" analysis consistent

with the principles laid out in this opinion. *See* Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir.1992); Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir.1995).

### C. Common Law Right of Access

After conducting a "good cause" analysis, if the district court were to find a protective order is not appropriate for the confidential settlement information produced to the underlying plaintiffs, then this information could be distributed to the Los Angeles Times. *See* San Jose Mercury News, Inc. v. United States Dist. Ct., 187 F.3d 1096, 1103 (9th Cir.1999). Under this circumstance, the lower court would not need to analyze the common law right of access issue.

**[10]    [11]    [12]**    If, however, the court finds "good cause" exists to protect this information, then it must determine whether the Los Angeles Times has a right to Exhibit 8 under the common law right of access, a separate and independent basis for obtaining this information. Not only can the public generally gain access to unprotected information produced during discovery, but it also has a federal common law right of access to all information filed with the court. This common law right of access to inspect various judicial documents is well settled in the law of the Supreme Court and this circuit. *See* Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); San Jose Mercury News, Inc. v. U.S. Dist. Ct., 187 F.3d 1096, 1102 (9th Cir.1999); Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir.1995). This common law right "creates a strong presumption in favor of access" to judicial documents which "can be overcome" only by showing "sufficiently important countervailing interests." San Jose Mercury News, Inc., 187 F.3d at 1102; *see also* Hagestad, 49 F.3d at 1434. **\*1213** In deciding whether sufficient countervailing interests exist, the courts will look to the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." Tragesser, 49 F.3d at 1434.

**[13]**    Relying on this body of law, the appellees argue that even if Exhibit 8 has been filed with the court pursuant to a protective order, GM must still show "sufficiently important

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 33 of 39

Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206 (2002)
31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

countervailing interests" to overcome the strong presumption of access to this sealed information. We review de novo whether the presumption of access applies to Exhibit 8.

 **[14]**    The issue thus presented is whether the strong presumption of access applies to materials filed with the court under seal pursuant to a valid protective order. Although the Ninth Circuit has never addressed this issue, other courts have determined that the federal common law right of access does not apply to documents filed under seal. *See*

🚩 *United States v. Corbitt,* 879 F.2d 224, 228 (7th Cir.1989) ("While this Court has recognized that the common law right of access creates a strong presumption in favor of public access to materials submitted as evidence in open court, this presumption should not apply to materials properly submitted to the court under seal."); *see also Lawmaster v. United States,* 993 F.2d 773, 775 (10th Cir.1993); *United States v. Certain Real Property Located In Romulus, Wayne County, Michigan,* 977 F.Supp. 833, 836 (E.D.Mich.1997); *Grundberg v. Upjohn Co.,* 140 F.R.D. 459, 465 (D.Utah 1991). We agree with these courts. When a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality. Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders. Although we understand the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.), it makes little sense to render the district court's protective order useless simply because the plaintiffs attached a sealed discovery document to a nondispositive sanctions motion filed with the court. *See, e.g.,* 🚩 *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1983) ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."). *Cf.* 🚩 *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 252 (4th Cir.1988) ("Once the [sealed discovery] documents are made part of a *dispositive* motion [summary judgment motion ruled

upon by the court] ... they lose their status of being raw fruits of discovery." (emphasis added and quotation omitted)).

 **[15]**    Therefore, when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released.

**D. First Amendment**
 **[16]**    The appellees ask this panel to decide whether it has a First Amendment right to the information contained in Exhibit **\*1214** 8 if we were to reverse and/or remand to the lower court with respect to the protective order and the common law right of access.

The district court did not adjudicate this issue and the parties barely raised it in their briefs. We decline to address this issue under the state of the record below. *See Barsten v. Department of Interior,* 896 F.2d 422, 424 (9th Cir.1990) ("We decline to consider the issue here, believing that the wiser course is to allow the district court to rule on it in the first instance.").

**III. Conclusion**
The district court failed to apply the correct legal standard when it determined a protective order was not appropriate for this discovery material. If the court, after conducting a good cause analysis, lifts the protective order on the confidential settlement information produced, then this information can be distributed to the public pursuant to its presumptive right of access. Case closed. If, however, the lower court on remand does not modify the protective order already in place, the presumption is rebutted, and the intervenor must then provide sufficiently compelling reasons why the sealed discovery information should be released. We vacate and remand to the district court for further proceedings not inconsistent with the legal standards set forth in this opinion.

VACATED AND REMANDED.

**All Citations**

307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

## Footnotes

\* The Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

1 Although not an issue on appeal, we note how the lower court properly put the burden of proof on GM to show why a protective order was necessary. In ⚑ *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 472 (9th Cir.1992), we rejected the argument that intervenors need to show "extraordinary circumstances" before modifying a protective order. We explained how the burden of proof will remain with the party seeking protection when the protective order was a stipulated order and no party had made a "good cause" showing.

---

**End of Document**          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**Rugo v. Hardwick, Not Reported in Fed. Supp. (2017)**

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 35 of 39

2017 WL 2623771

Only the Westlaw citation is currently available.

United States District Court, E.D. Washington.

Shanna RUGO and Belinda Dunn, Plaintiffs,

v.

Rob HARDWICK DDS, a sole proprietorship; Robert
W. Hardwick, Jr., DDS, a sole proprietorship; Robert
W. Hardwick, Jr. and Michelle Hardwick, and their
marital community comprised thereof, Defendants.

No. 2:16-CV-00444-SMJ
|
Signed 06/16/2017

**Attorneys and Law Firms**

Sarah E. Derry, Loyd James Willaford, Cline & Casillas,
Seattle, WA, for Plaintiffs.

John Cornelius Versnel, III, Kyle J. Rekofke, Lee Smart, PS
Inc., Seattle, WA, for Defendants.

### ORDER DENYING IN PART AND
### GRANTING IN PART PLAINTIFFS'
### MOTION FOR A PROTECTIVE ORDER

SALVADOR MENDOZA, JR., United States District Judge

### I. INTRODUCTION

**\*1** Before the Court, without oral argument, are Plaintiffs
Shanna Rugo and Belinda Dunn's Motion for a Protective
Order Quashing Subpoenas and Prohibiting Defendant
Contact with Plaintiffs' Employers, ECF No. 28, and related
motion to expedite, ECF No. 33. Through these motions
Plaintiffs seek a protective order quashing Defendants' Rob
Hardwick DDS, Robert W. Hardwick, Jr., DDS, Robert
W. Hardwick, Jr., and Michelle Hardwick's (collectively
"Defendants") proposed third-party subpoenas to Plaintiffs'
current and other former employers seeking Plaintiffs'
employment records. Plaintiffs also seek to prohibit
Defendants from contacting the third-parties at issue here.
Defendants oppose the motions. Having reviewed the
pleadings and the file in this matter, the Court is fully
informed and denies in part and grants in part the present
motion. As explained in detail below, Defendants are
entitled to the discovery they seek and Plaintiffs have not

demonstrated that the requested relief is appropriate under
these circumstances. However, because Plaintiffs have raised
reasonable privacy concerns that constitute good cause,
a limited protective order restricting who can view and
have access to Plaintiffs' employment records is appropriate.
Lastly, because the motion to expedite is now moot since the
Plaintiffs' depositions have been postponed, it is denied.

### II. BACKGROUND

On December 22, 2016, Plaintiffs Rugo and Dunn filed
the instant lawsuit alleging that Defendants—collectively
constituting Plaintiffs' former employer—retaliated against
them for opposing sexual harassment in the workplace in
violation of state and federal law. ECF No. 1. Plaintiffs bring
claims under Title VII of the Civil Rights Act of 1964,
codified at 📄 42 U.S.C. § 2000e, *et seq*, and RCW 49.60.210.
*Id.* at 7–9. They seek, among other things, injunctive and
monetary relief, including damages for past and future lost
income and benefits and emotional distress and harm. *Id.* at
9–10.

The instant motion concerns a discovery dispute between
the parties. In short, after Defendants informed Plaintiffs on
May 11, 2017, that they intended to seek employment records
directly from Plaintiffs' employers, Plaintiffs asserted their
opposition to such requests; the parties attempted and failed
resolve their disagreement. ECF No. 31 at 2–3. Defendants
first sought to obtain a release from Plaintiffs that would
allow Plaintiffs' current and other former employers to release
their employee files to Defendants. *Id.* at 2. After Plaintiffs
refused, Defendants informed Plaintiffs that they would seek
to obtain this information through third-party subpoenas.
*Id.* at 2–3. The parties have exchanged several letters on
the matter and discussed the issue via phone but have not
come to a resolution. Though there appears to have been
some confusion as to whether Defendants had already served
the third-party subpoenas, they have yet to do so. *Id.* at 3.
However, Plaintiffs' employers have received letters of intent
to serve subpoenas from Defendants. *Id.*

**\*2** Plaintiffs filed the instant motion and related motion to
expedite on May 26, 2017. ECF Nos. 28 and 33.

Plaintiffs maintain that Defendants intend to issue third-party
subpoenas seeking the following information:

Any and all employment and payroll records, including, but not limited to, each personnel file, each departmental file, each formal or informal supervisor's file, all records relating to any reference check completed, all payroll records, all records identifying employee benefits, each records relating to the reason for termination, all records relating to complaints about work performance and investigation into such complaints, records reflecting complaints of discrimination to any agency, and a job description regarding [Shanna Rugo and Belinda Dunn].

*See, e.g.*, ECF No. 31-1 at 74 and 91. Defendants assert that this indeed is the information they seek from Plaintiffs' other employers. However, they state that "unbeknownst" to them the phrase "[a]ny and all employment and payroll records, including, but not limited to" was somehow erroneously added to the notice letters and draft subpoenas that Plaintiffs cite. ECF No. 35 at 2–3. Defendants clarify that should the Court deny the instant motion and the third-party subpoenas are issued, the phrase "[a]ny and all employment and payroll records, including, but not limited to" will be stricken. *Id.*

### III. DISCUSSION

#### A. Plaintiffs possess the requisite standing to seek relief.

"A party lacks standing to challenge a subpoena issued to a third party unless the party making the challenge claims a personal right or privilege with respect to the discovery sought in the subpoena." *Emara v. Multicare Health Sys.*, No. 3:11-CV-6055-RBL, 2012 WL 5205950 at *2 (W.D. Wash. Oct. 22, 2012) (citations omitted); *see also* *Crispin v. Christina Audigier, Inc.*, 717 F. Supp. 2d 965, 973 (C.D. Cal. May 26, 2010) (citations omitted). In general, the Federal Rules of Civil Procedure permit relatively broad yet tailored and proportional discovery of relevant material. *See generally* Rule 26(b). Indeed, the Rules expressly allow the discovery of matter that may ultimately be inadmissible as evidence.

*Id.* Subpoenas are but one method for procuring relevant information that parties can employ. *See generally* Rule 45. However, language within Rule 45 explicitly provides a mechanism for quashing or modifying overly burdensome and unnecessary discovery requests made through subpoenas. *See* Rule 45(d). Additionally, parties can seek protective orders under Rule 26(c) to guard against discovery abuses. *See generally* Rule 26(c).

Here, Defendants have yet to issue third-party subpoenas. They have, however, made it clear that they will serve them unless Plaintiffs agree to the release of the information Defendants seek from Plaintiffs' employers. Since Defendants are pursuing Plaintiffs employee and payroll information—Plaintiffs' employment records—from several current and past employers, there is no question that Plaintiffs have a "personal right or privilege" in the requested discovery. Accordingly, Plaintiffs have standing to challenge Defendants' discovery requests and seek a protective order quashing the subpoenas and prohibiting contact with Plaintiffs' employers.

#### B. Though Defendants are entitled to obtain most of the information they seek, so too are Plaintiffs entitled to a protective order to safeguard their privacy interests.

**\*3** In filing the present motion, Plaintiffs seek a protective order preventing the issuance of third-party subpoenas to Plaintiffs' current and past employers—other than Defendants—and for an order prohibiting Defendants from contacting their employers. ECF No. 28 at 6. In asking for this relief, Plaintiffs argue that: (1) they have substantial privacy interests here and Defendants should not be allowed to jeopardize their current employment by undertaking a fishing expedition, *id.* at 7–8; (2) the information Defendants seek is irrelevant and unlikely to lead to admissible evidence, *id.* at 8–14; and (3) Defendants should be prohibited from contacting Plaintiffs' current employers, *id.* at 14–15. Defendants counter (1) that employment records from former or subsequent employers, including those sought here, are relevant, ECF No. 35 at 4–9, and (2) Plaintiffs' privacy argument does not meet the burden required to obtain a protective order, *id.* at 9–11.

In resolving this disagreement, the Court first addresses the relevancy question before turning to Plaintiffs' privacy argument.

**1. The employment records Defendants seek are relevant to damages, mitigation, and Plaintiffs' emotional distress claims. However, there is no indication that Plaintiffs' credibility is at issue and therefore the employment records are not relevant on that basis.**

As previously stated, the Federal Rules of Civil Procedure permit relatively broad yet tailored and proportional discovery of relevant material. *See generally* Rule 26(b); *id.* ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ... the parties' relative access to relevant information ... the importance of the discovery....")

The instant case is an employment dispute concerning allegations of retaliation for opposing sexual harassment between Defendants and their longtime office managers, the Plaintiffs. *See generally* ECF No. 1. Among the relief Plaintiffs seek is lost income and benefits and emotional distress and harm. *Id.* at 9–10. In responding to Plaintiffs' complaint, Defendants asserted several affirmative defenses including failure to mitigate damages, Plaintiffs' job performance did not meet expectations, among others ECF No. 9 at 6–9.

Defendants must be allowed to obtain discovery to pursue their affirmative defenses and rebut Plaintiffs' claims and the relief sought. Though Plaintiffs have already provided some information relevant to mitigation, ECF No. 28 at 8, this is insufficient. As Defendants point out, since Plaintiffs also seek lost benefits as part of the damages requested, Plaintiffs' other employers are in the best position to provide a complete and accurate picture of Plaintiffs' total compensation. Unlike the plaintiff in *Abu v. Piramco Sea-Tac, Inc.*, No. C08-1167RSL, 2009 WL 279036, at 2 (W.D. Wash. Feb. 5, 2009), plaintiffs here seek lost benefits. This information would go toward mitigation, would provide an unbiased view of Plaintiffs' total compensation, and is therefore relevant.

Plaintiffs also seek damages for emotional distress and harm. ECF No. 1 at 10. Defendants have the "right to gather evidence to rebut the emotional distress claim" just as Plaintiffs have the obligation to provide evidence of their emotional states before and after Defendants terminated their employment. *Awosika v. Target Corp.*, No. 11-0185-RSM, 2011 WL 13048452 at 3 (W.D. Wash. May 26, 2011). Accordingly, Plaintiffs' employment records with

other employers are also relevant to Plaintiff's emotional distress claims.

However, Defendants have not shown that Plaintiffs' credibility is an issue in this case and therefore the employment records are not relevant on this basis. Defendants cite *Awosika* for the proposition that employment records are relevant because they are admissible to impeach Plaintiffs on cross-examination even if, as Plaintiffs argue, the records are inadmissible under Federal Rule of Evidence 404(a). ECF No. 35 at 8. Here, unlike in *Awosika*, Defendants have not made any specific allegations placing Plaintiffs' credibility at issue. In *Awosika*, defendant Target maintained that Awosika's employment records "were necessary to assess [her] credibility, particularly in regard to whether she was truthful on her application for employment with Target and 'whether she has previously filed frivolous lawsuits.' " *Awosika*, 2011 WL 13048452 at 3. A generalized credibility concern, such as the one asserted in this case, would encompass too much with no limiting principle. *Id.* ("If credibility was the only stated justification for these subpoenas, they would be overbroad under Rule 26(b).") Accordingly, credibility alone would not make the employment records relevant. Nevertheless, since Plaintiffs' employment records with other employers are relevant for other reasons, Defendant can and should be able to obtain them through discovery.

**2. A limited protective order is warranted in this case.**

**\*4**  For good cause shown, a court can "grant an order to protect 'a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' " *Awosika*, 2011 WL 13048452 at 1 (citing Fed. R. Civ. P. 26(c)(1)). The party seeking a protective order "bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Id.* (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)). General assertions do not constitute good cause. *Id.* "The requirement, then, is that a party seeking protection of her own employment records must assert how, specifically, she will be harmed by the discovery of those records." *Id.*

Here, Plaintiffs lean heavily on their asserted privacy interests. Plaintiffs aver that they are happy with their current jobs, are extremely concerned that their jobs may be jeopardized, including by burdening their current employers

Rugo v. Hardwick, Not Reported in Fed. Supp. (2017)

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 38 of 39

with discovery or because their employers may take a negative view of Plaintiffs suing a former employer. ECF No. 28 at 7–8. Plaintiffs assert that they have not told anyone about the present lawsuit because they are concerned about tarnishing their reputation and this concern is heightened because they live in very small communities. *Id.* at 8. They worry about how public subpoenas could jeopardize their jobs and reputations. *Id.* Plaintiffs also filed declarations explaining their concerns with their current and past employers receiving public subpoenas. ECF Nos. 29 and 30.

While the Court is sympathetic to Plaintiffs' reservations about having third-party subpoenas served on their current and past employers, as other courts have recognized, Plaintiffs are statutorily protected from retaliation because they filed this lawsuit. *See, e.g.,* ⚑ *Abu* 2009 WL 279036 at 3. Moreover, as explained above, Defendants must be allowed to develop their case. Accordingly, the broad and categorical relief Plaintiffs seek—quashing the subpoenas and prohibiting Defendants from contacting Plaintiffs' employers—is inappropriate.

Nevertheless, federal courts have discretion to issue protective orders forbidding or limiting discovery. ⚑ *Abu,* 2009 WL 279036 at 2. Moreover, Rule 26(c) permits courts, when good cause is shown, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Although Plaintiffs have not shown good cause to merit quashing the subpoenas and prohibiting contact with Plaintiffs' employers, the Court finds that Plaintiffs have demonstrated good cause to obtain a protective order limiting who can see their employment records. Plaintiffs live and work in the small communities of Colville and Republic, neither one exceeding 12,000 residents. [1] Though Plaintiffs chose to file a public lawsuit, their declarations establish that there is a reasonable concern that exposing private information from their employment records could have an adverse effect on Plaintiffs and their families. Moreover, no information has been presented to the Court showing that Plaintiffs have taken affirmative steps to publicize this lawsuit.

Accordingly, the Court **ORDERS** that all information obtained through Defendants' third-party subpoenas at issue here will be designated **CONFIDENTIAL** and available only to the attorneys litigating this case and the Court. Should

either party submit employment records obtained through the third-party subpoenas at issue here to support any motions or other filings with this Court, such documents shall be redacted or submitted under seal to protect private information. Of course, the parties shall take care to only designate and protect truly sensitive and private information and not apply these protective designations broadly.

### 3. The documents Defendants can request in the third-party subpoenas.

**\*5** Additionally, the Court will modify the third-party subpoena's language as suggested by Defendants. Defendants' third-party subpoenas shall only request:

> Each personnel file, each departmental file, each formal or informal supervisor's file, all records relating to any reference check completed, all payroll records, all records identifying employee benefits, each records relating to the reason for termination, all records relating to complaints about work performance and investigation into such complaints, records reflecting complaints of discrimination to any agency, and a job description regarding [Shanna Rugo or Belinda Dunn, as appropriate].

Accordingly, **IT IS HEREBY ORDERED**:

**1**. Plaintiffs' Motion for a Protective Order Quashing Subpoenas and Prohibiting Defendant Contact with Plaintiff's Employers, **ECF No. 28**, is **DENIED in PART and GRANTED in PART**.

**2**. Plaintiffs' Motion for Expedited Hearing of Plaintiffs' Motion for Protective Order, **ECF No. 33**, is **DENIED as MOOT**.

**IT IS SO ORDERED**. The Clerk's Office is directed to enter this Order and provide copies to all counsel.

Case 2:23-cv-00186-TL    Document 35-1    Filed 12/13/23    Page 39 of 39

**Rugo v. Hardwick, Not Reported in Fed. Supp. (2017)**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2623771

## Footnotes

1    *See* United States Census 2010 data available at https://www.census.gov/2010census/ (last accessed on June 15, 2017). Searching within statistics for the State of Washington reveals that the Colville and Republic, WA minor civil divisions comprised 11,113 and 3,126 people, respectively.

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.